**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

THAMIR AZIZ HANNA,
                        *Petitioner,*

v.

PETER D. KEISLER,* Acting
Attorney General,
                        *Respondent.*

No. 04-73960

Agency No.
A78-542-134

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
April 11, 2007—Pasadena, California

Filed November 5, 2007

Before: Harry Pregerson, Ferdinand F. Fernandez, and
Eugene E. Siler, Jr.,** Circuit Judges.

Opinion by Judge Pregerson

---

*Peter D. Keisler is substituted for his predecessor, Alberto R. Gonzales, as Acting Attorney General of the United States, pursuant to Fed. R. App. P. 43(c)(2).

**The Honorable Eugene E. Siler, Jr., Senior United States Circuit Judge for the Sixth Circuit, sitting by designation.

14623

## COUNSEL

Douglas D. Nelson and Alejandro O. Campillo, San Diego, California, for the petitioner.

Mary Jane Candaux and Jennifer L. Lightbody, Office of Immigration Litigation, Washington, D.C., for the respondent.

## OPINION

PREGERSON, Circuit Judge:

Thamir Aziz Hanna petitions for review of the Board of Immigration Appeals' ("BIA") decision affirming the decision of Immigration Judge Kenneth Bagley denying Hanna's request for asylum. The Immigration Judge ("IJ") examined Hanna's eligibility for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). The IJ denied all three forms of relief and found that Hanna was not credible. The BIA affirmed the IJ's holding that (a) Hanna had not presented adequate evidence of fear of persecution, (b) Hanna had not demonstrated that he had suffered persecution compelling asylum for humanitarian reasons, and (c) Hanna was unable to show a well-founded fear of persecution after Saddam Hussein and the Ba'ath party fell from power.

Hanna appeals the BIA's denial. We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1). We reverse the BIA's decision regarding changed country conditions and remand to the BIA to consider Hanna's credibility, whether he suffered past persecution, and whether he now has a well-founded fear of future persecution. We also remand Hanna's withholding of removal claim.

## I.  Background

Hanna is a native and citizen of Iraq. He was born in Baghdad and is a Chaldean Catholic. Hanna fled Iraq on September 27, 1997 on account of three incidents described below.

In January 1992, Ba'ath party officials arrested and detained Hanna for over a month. Hanna's captors tortured him while he was jailed. Hanna was accused of being anti-government and of belonging to the Assyrian Democratic Party, in part because he was taking extra math classes from a Christian teacher. Government officials also accused Hanna of making and distributing anti-government fliers with his math teacher.

In March 1994, local police falsely accused Hanna of selling "expired" goods, laundering money, and using counterfeit money. He was jailed for fifteen days. Hanna stated that guards beat him and blindfolded him during his detention.

In 1997, members of the Student Affairs Bureau and Party Organization Committee at Hanna's school tried to force Hanna to join the Fedayeen Saddam, a paramilitary organization loyal to Saddam Hussein. Hanna testified that the group told him if he did not join the Fedayeen Saddam he would be accused of sabotaging the government and he would not be allowed to graduate from university. Hanna told the recruiters that he did not want to join the organization because doing so went against the principles of his Christian faith. Although he

tried to refuse to join the group, the members told him that he had two days to change his mind.

Hanna was afraid for his life after his interaction with the recruiters. Hanna told his father about the incident, and his father advised him to flee Baghdad before the recruiters were due to return. That night Hanna took a bus to Batnaya in northern Iraq. While he was in Batnaya, Ba'ath party members forced their way into the family home looking for Hanna. The inquisitors hit Hanna's brother in the eye with a gun. A bullet fired at the floor by the intruders ricocheted and hit Hanna's father in the leg, breaking a bone and putting him in the hospital for a month. One of the officers spat in the face of Hanna's mother. The Ba'ath party officials ransacked the house looking for Hanna and left after threatening the family members that harsher consequences would follow if they did not produce Hanna.

Hanna's father wrote Hanna a letter telling him of the incident at the house. The letter advised Hanna that he would likely face execution if he did not flee the country. Hanna then fled Iraq, traveling through Turkey, Greece, Belgium, France, and Mexico before eventually reaching the United States.

On November 8, 2001, Hanna arrived at the U.S./Mexico border at San Ysidro and asked for asylum. The government placed Hanna in removal proceedings on November 20, 2001. Hanna conceded removability and applied for asylum.

The IJ considered Hanna's eligibility for asylum, withholding of removal, and relief under Article 3 of the United Nations Convention Against Torture. After multiple hearings, the IJ denied all forms of relief on April 28, 2003, approximately one month after the United States war in Iraq began. Based on inconsistencies in Hanna's testimony, the IJ found him not to be a credible witness. The IJ also held that Hanna had not shown evidence of persecution, and asserted that there

was no longer a viable threat against Hanna because Saddam Hussein and the Ba'ath party were no longer in power. The IJ held that Hanna did not qualify for withholding of removal or for CAT relief.

The BIA affirmed the IJ's decision on July 23, 2004. The BIA "assumed arguendo" that Hanna suffered past persecution, but held that Hanna no longer had a well-founded fear of persecution because coalition forces had taken control of Iraq. The BIA also held that Hanna failed to establish that "any persecution he may have suffered compels a grant of asylum as a matter of humanitarian concerns." The BIA upheld, without comment, the IJ's decision regarding withholding and CAT relief. The BIA did not directly address Hanna's credibility.

## II.   Standard of Review

The BIA's decision that an alien has not established eligibility for asylum is reviewed for substantial evidence. *Gu v. Gonzales*, 454 F.3d 1014, 1018 (9th Cir. 2006). The BIA's determination must be upheld if supported by reasonable, substantial, and probative evidence in the record. *Lopez v. Ashcroft*, 366 F.3d 799, 802 (9th Cir. 2004). We also review factual findings underlying the denial of asylum for substantial evidence. *Li v. Ashcroft*, 356 F.3d 1153, 1157 (9th Cir. 2004) (en banc). The Immigration and Nationality Act explains that "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

## III.   Adverse Credibility

The IJ made an adverse credibility finding regarding Hanna. The BIA, however, did not mention this finding in its opinion. Instead the BIA assumed, without deciding, that Hanna suffered past persecution. That assumption necessarily carried with it the assumption, again without deciding, that

Hanna was credible. Thus, because the BIA has expressly declined to address Hanna's credibility, we do not decide that issue here in the first instance. *See Damaize-Job v. I.N.S.,* 787 F.2d 1332, 1338 (9th Cir. 1986) (noting that "[i]t is our practice to remand to the Board for credibility findings whenever we reverse a Board decision in which the Board has expressly abstained from deciding the credibility issue.").

## IV. Asylum Claim

**[1]** To qualify for asylum, Hanna must demonstrate that he is a refugee under the Immigration and Nationality Act. The act defines "refugee" as a person unable or unwilling to return to the country of that person's nationality because of "persecution or a well-founded fear of persecution" on account of five protected grounds. 8 U.S.C. § 1101(a)(42). Those five grounds are race, religion, nationality, membership in a particular social group, or political opinion. *Id.*

**[2]** An applicant may qualify as a refugee in two ways. "First, the applicant can show past persecution on account of a protected ground." *Deloso v. Ashcroft*, 393 F.3d 858, 863 (9th Cir. 2005). This showing of past persecution creates a presumption of a fear of future persecution. *Id.* at 863-64. This presumption shifts the burden to the government to show that there has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution. *Id.* Second, an applicant can be eligible for asylum by "actually showing a well-founded fear of future persecution, again on account of a protected ground." *Id.* at 864. We discuss each of the two ways to show eligibility for asylum below.

### A. Past Persecution

**[3]** The BIA "assumed arguendo that [Hanna] suffered past persecution during Saddam Hussein's regime." Because the BIA has not made this determination in the first instance, we

do not reach that issue. *See I.N.S. v. Ventura*, 537 U.S. 12, 16 (2002) (per curiam). Instead, we also assume arguendo that Hanna suffered past persecution.

Once past persecution is established, "a rebuttable presumption of a well-founded fear [of future persecution] arises, and the burden shifts to the government to demonstrate that there has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear [of future persecution]." *Tawadrus v. Ashcroft*, 364 F.3d 1099, 1103 (9th Cir. 2004).

**[4]** Here, because we assume Hanna suffered past persecution, the burden shifts to the government to demonstrate a fundamental change in circumstances in Iraq such that Hanna no longer has a well-founded fear of future persecution. The government argues that there has been a fundamental change in conditions in Iraq because of the fall of the Ba'ath party in 2003, five years after Hanna fled Iraq. The BIA agreed with the government and rejected Hanna's asylum application on the grounds that "there has been a fundamental change in circumstances such that the respondent no longer has a well-founded fear of [future] persecution by Saddam Hussein or members of the Ba'ath party." We review the BIA's factual findings regarding changed country conditions for substantial evidence. *Lopez v. Ashcroft*, 366 F.3d 799, 805 (9th Cir. 2004).

**[5]** Hanna does not argue that he is likely to suffer future persecution by the Ba'ath party because that party lost control of Iraq in 2003. However, that fact alone does not satisfy the government's burden to show that circumstances have changed in Iraq to the extent that Hanna no longer has a well-founded fear of future persecution. To rebut the presumption of a well-founded fear of future persecution, the government must show "by a preponderance of the evidence" that there has been a "fundamental change in circumstances such that the applicant no longer has a well-founded fear." 8 C.F.R.

§ 1208.13(b)(1)(i)(A). The government here did not show that Hanna no longer has a well-founded fear of being persecuted on account of his religion. The government showed only that Hanna would not be persecuted on account of his religion by a government led by Saddam Hussein. The government did not make any showing regarding whether Hanna would likely fear religious persecution from others in post-Saddam Hussein Iraq.[1]

**[6]** Therefore, substantial evidence does not support the BIA's finding of changed circumstances rebutting the presumption of a well-founded fear of future persecution. We thus reverse the BIA's changed circumstances finding and remand to the BIA to consider Hanna's adverse credibility finding and his claim of past persecution in the first instance.

### B.   Well-Founded Fear of Future Persecution

As noted above, there are two ways to be eligible for asylum. The petitioner can show past persecution, which creates a presumption that a well-founded fear of persecution exists. This presumption can only be rebutted by a showing of changed circumstances, as discussed above. The second way to show eligibility for asylum is by "actually showing a well-founded fear of future persecution . . . on account of a protected ground." *Deloso v. Ashcroft*, 393 F.3d 858, 863-64 (9th Cir. 2005) (internal citations and quotation marks omitted).

---

[1]*See Youkhana v. Gonzales,* 460 F.3d 927, 932 (7th. Cir. 2006) (noting that "the fact that the Ba'ath Party has been removed from power does not necessarily mean that conditions in Iraq have improved for Assyrian Christians."). If anything, the changed circumstances in Iraq would seem to make it more likely, not less likely, that Hanna would suffer persecution in Iraq on account of his religion. *See also Margos v. Gonzales*, 443 F.3d 593, 598 (7th Cir. 2006) ("Ironically, under [ ] Hussein's iron fist, Assyrian Christians and similar minorities were arguably better off as their dictator did not tolerate factional strife and civil unrest within 'his' country (unless it furthered his own ends).").

In his asylum hearing in April 2003, Hanna testified that he feared that he would continue to be persecuted by Muslims in Iraq. It is difficult, however, for us to assess on this record whether his fear of future persecution is objectively reasonable because so much in Iraq has changed since his final hearing on April 28, 2003, one month after the fall of Saddam Hussein. Therefore, upon remand, the Board may wish to consider whether Hanna's fear of future persecution is objectively reasonable in light of the current situation in Iraq.

## V.   Humanitarian Asylum

**[7]** Hanna also argued for relief on humanitarian asylum grounds.[2] The BIA may grant humanitarian asylum to a victim of past persecution, even where the government has rebutted the applicant's fear of future persecution, if the applicant establishes one of two things. First, the asylum seeker can show "compelling reasons for being unwilling or unable to return to the country [that he fled] arising out of the severity of the past persecution." 8 C.F.R. § 1208.13(b)(1)(iii)(A). Or, under the second prong of the humanitarian asylum analysis, the asylum seeker can show "a reasonable possibility that he or she may suffer other serious harm upon removal to that country." 8 C.F.R. § 1208.13(b)(1)(iii)(B); *see also Belishta v. Ashcroft*, 378 F.3d 1078, 1081 (9th Cir. 2004).

**[8]** The BIA held that Hanna "failed to establish that any persecution he may have suffered compels a grant of asylum as a matter of humanitarian concerns." Though we agree that the severity of Hanna's past persecution is not sufficient to qualify for humanitarian asylum under the first prong, the BIA seems to have ignored the second prong of the humani-

---

[2]Because we have reversed the BIA's changed country conditions determination, the humanitarian asylum analysis may not be necessary to consider on remand. We include it only because it could become relevant if Hanna credibly establishes past persecution and the government subsequently rebuts that presumption of a well-founded fear of persecution.

tarian asylum analysis. This prong, as described above, requires only a reasonable possibility that Hanna may suffer serious harm upon removal. Because it appears that Hanna could have qualified for humanitarian asylum based on the likely future harm he would suffer as a Christian upon his return to Iraq and because the BIA does not seem to have considered this prong, we remand to the BIA to consider whether there exists a "reasonable possibility" that Hanna "may suffer other serious harm upon removal" to Iraq.

## VI.    Withholding of Removal

To qualify for withholding of removal, Hanna must show that it is more likely than not that his life or freedom would be threatened in Iraq on account of his race, religion, nationality, membership in a particular social group, or political opinion. *Al-Harbi v. INS*, 242 F.3d 882, 888 (9th Cir. 2001). As with asylum, Hanna can generate a presumption of eligibility for withholding by showing past persecution. *See Baballah v. Ashcroft*, 367 F.3d 1067, 1079 (9th Cir. 2004). This presumption may be rebutted only if the government shows a fundamental change in circumstances or shows that the applicant could reasonably relocate within the country of that person's nationality. 8 C.F.R. § 1208.16(b)(1). Unlike asylum, withholding of removal does not require discretion on the part of the Attorney General. *Al-Harbi*, 242 F.3d at 888.

[9] The BIA affirmed the IJ's decision that Hanna "failed to establish his eligibility for withholding of removal." We review the BIA's decision for substantial evidence. As with Hanna's asylum claim, the BIA's assumption of past persecution creates a presumption of eligibility for withholding. And, as with Hanna's asylum claim, we reverse the BIA's finding of changed country conditions. Because the government did not successfully rebut the presumption of eligibility for withholding, we remand for the BIA to consider his past persecution claim on the merits.

## VII. CAT Claim

**[10]** Hanna now concedes that he is not eligible for relief under the Convention Against Torture. We agree.

### Conclusion

The BIA assumed that Hanna suffered past persecution on account of his religion, creating a presumption of a fear of future persecution. As a result, the burden shifted to the government to show changed country conditions rebutting the presumption of a fear of future persecution. The BIA's holding that the fall of the Ba'ath party removed any fear of future persecution is not supported by substantial evidence. Thus, we reverse this decision and remand for the BIA to consider whether Hanna suffered past persecution and whether he has a well-founded fear of future persecution. Because the BIA's mistaken conclusion that the fall of the Ba'ath party also foreclosed Hanna's petition for withholding of removal, we remand that issue as well. Finally, we remand Hanna's claim for humanitarian asylum with instructions that the BIA consider whether Hanna has shown that a reasonable possibility exists that he will suffer serious harm if he were returned to Iraq. We reject Hanna's claim for relief under the Convention Against Torture.

**Petition GRANTED.**