Mushtaq **BAHOU**, aka Mushtaq Grgees Bahou, Petitioner,

v.

Michael B. **MUKASEY**, Attorney General, Respondent.

No. 04–74787.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 11, 2008.

Filed April 29, 2008.

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36–3.

Douglas D. Nelson, for Petitioner.

Ronald E. Lefevre, Office of the District Counsel Department of Homeland Securi-

ty, San Francisco, CA, Jennifer L. Lightbody, Jem C. Sponzo, OIL, M. Jocelyn Wright, DOJ–U.S. Department of Justice, Civil Div./Office of Immigration Lit., Washington, DC, Kathleen M. Salyer, Anne R. Schultz, U.S. Attorney's Office, Miami, FL, for Respondent.

Before: GOODWIN, PREGERSON, and D.W. NELSON, Circuit Judges.

## MEMORANDUM *

Mushtaq G. Bahou, a native and citizen of Iraq, petitions for review of the Board of Immigration Appeals' ("BIA") order denying his application for asylum and withholding of removal.[1] The parties are familiar with the facts of this case, and we repeat them only to the extent necessary to understand our disposition. We have jurisdiction under 8 U.S.C. § 1252. We grant the petition and remand.

Bahou is a Chaldean Christian who lived in Iraq prior to arriving in the United States. He testified that both he and his family members became targets for persecution on account of their religion at the hands of Ba'ath Party officials. The Immigration Judge ("IJ") found that Bahou's testimony was not credible. Bahou appealed to the BIA. While the appeal was pending, the BIA *sua sponte* remanded the matter to the IJ to consider changed country conditions. On remand, the IJ affirmed his earlier denial based solely on his original adverse credibility finding. The IJ did not conduct a hearing or allow the parties to submit briefs on changed country conditions. The case then returned to the BIA on certification from the IJ. The BIA adopted the IJ's adverse

credibility finding. The BIA also held that Bahou had failed to show that his fear of persecution remained unaffected by changed country conditions. For these reasons, the BIA denied Bahou's appeal.

Because the BIA adopted the IJ's adverse credibility finding, we treat the IJ's reasons as the BIA's reasons. *See He v. Ashcroft*, 328 F.3d 593, 595–96 (9th Cir. 2003). The IJ listed many reasons for his adverse credibility determination. Upon careful review of the record, however, we conclude that the IJ's determination is not supported by substantial evidence. *See Hoque v. Ashcroft*, 367 F.3d 1190, 1194–95 (9th Cir.2004) (explaining that an adverse credibility determination must be supported by substantial evidence).

The IJ first reasoned that Bahou was not credible because his very identity was in question. The IJ listed four bases for this finding: (1) Bahou used a false Greek passport to enter Mexico, (2) the identity documents Bahou proffered did not appear as the IJ would have expected them to appear if they were authentic, (3) Bahou failed to have his identity documents authenticated, and (4) Bahou discarded his Mexican exit visa before entering the U.S.

None of these four reasons support the IJ's finding that Bahou's identity was in question. First, an asylum seeker's use of a false passport in flight from his home country does not support an adverse credibility finding. *See Kaur v. Ashcroft*, 379 F.3d 876, 889 (9th Cir.2004) (concluding that the use of a false passport is "entirely consistent" with flight from persecution). Second, mere speculation concerning the appropriate appearance of foreign documents is not substantial evidence. *See Kumar v. Gonzales*, 444 F.3d 1043,

---

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. Bahou concedes that he is not eligible for relief under the Convention Against Torture.

1050–51 (9th Cir.2006) (rejecting IJ's finding that a foreign document was a forgery because IJ's finding was based solely on conjecture about how the document ought to appear). Third, failure to provide affirmative authentication for proffered documents is not substantial evidence. *See Wang v. INS,* 352 F.3d 1250, 1254 (9th Cir.2003) ("Mere failure to authenticate documents, at least in the absence of evidence undermining their reliability, does not constitute a sufficient foundation for an adverse credibility finding."). Finally, Bahou gave a plausible explanation for discarding his Mexican exit visa: other refugees told him that he should. No evidence in the record contradicted Bahou's explanation. Nonetheless, the IJ rejected this explanation based on speculation that Bahou ought to have kept the exit visa. Therefore, the IJ's finding on this point is also unsupported by substantial evidence. *See Shah v. INS,* 220 F.3d 1062, 1071 (9th Cir.2000) ("Speculation and conjecture cannot form the basis of an adverse credibility finding, which must instead be based on substantial evidence").

■ The IJ next supported his adverse credibility finding by citing seven purported discrepancies in Bahou's testimony. Six of these, however, were minor inconsistences that did not go to the heart of Bahou's asylum claim or enhance his claimed fear of persecution. For example, the IJ cited an inconsistency in Bahou's testimony about how much time Bahou spent hiding in the village of Alqosh. Bahou first testified that he had spent seven or eight days in Alqosh, but then later testified that he had hidden in Alqosh for "approximately ten days." These statements do not amount to a discrepancy because seven to eight days is "approximately ten days." Additionally, even if there were some discrepancy in this testimony, it would not amount to substantial evidence because whether Bahou spent eight or ten days in Alqosh is at most a minor discrepancy that does not go to the heart of his asylum claim.

The other five minor discrepancies involved: (1) the exact amount Bahou paid as a conscription avoidance fee in 1994, (2) the exact amount of a debt that a Ba'athist official owed Bahou's family store, (3) the exact number of refugees with whom Bahou traveled from Turkey to Greece, (4) whether the refugees crossed a river using an inner-tube or an inflatable boat, and (5) whether Bahou spoke to Spanish immigration officials when he entered Spain. Our review of the record reveals that none of these discrepancies went to the heart of, or enhance, Bahou's asylum claim. Therefore, we hold that none of those six minor discrepancies support the IJ's finding. *See Mendoza Manimbao v. Ashcroft,* 329 F.3d 655, 660 (9th Cir.2003) ("Minor inconsistencies in the record that do not relate to the basis of an applicant's alleged fear of persecution, go to the heart of the asylum claim, or reveal anything about an asylum applicant's fear for his safety are insufficient to support an adverse credibility finding.").

■ The IJ also cited a perceived discrepancy between Bahou's original statements to immigration officials and his later testimony at the asylum hearing regarding how long Bahou's father and brother were imprisoned by the Ba'athist security forces. This is the only purported discrepancy cited by the IJ that went to the heart of Bahou's claimed fear of persecution.

When Bahou entered the U.S., he told immigration officials that "[m]y father and my brother were held for six months and paid money to get released." At his asylum hearing, Bahou testified that his father and brother were still incarcerated. The IJ understood Bahou's original statement to immigration officials to be an assertion that his father and brother had been incarcerated for six months and then

released. This assertion, the IJ believed, was starkly different from Bahou's later testimony that his father and brother were still incarcerated.

Bahou, however, offered an explanation for this apparent discrepancy. Before surrendering to immigration officials, Bahou learned that his family had been able to pay money to secure the release of his father and his brother. The family expected the release to take place imminently. Thus, although the release never took place, Bahou believed that he was accurately reporting the situation to the immigration officers. The IJ rejected this explanation, reasoning that if Bahou had learned only that money had been paid to secure the release of his father and brother then "that is exactly how he would have been expected to relate the matter to Immigration officials questioning him about his asylum claim." Speculation about how an applicant would describe an event, however, is not substantial evidence and does not support an adverse credibility finding. *See Shah,* 220 F.3d at 1071; *see also Gui v. INS,* 280 F.3d 1217, 1225–27 (9th Cir. 2002) (rejecting IJ's finding that asylum seeker's account of event was incredible because the finding was based solely on the IJ's conjecture about how the asylum seeker would have acted). Therefore, we find that this basis also fails.

■ The IJ next explained that his adverse credibility finding was supported by "other aspects of his claim that do not appear to square with common sense." These aspects of Bahou's claim were that: (1) Bahou's father had been able to call Bahou during a raid on Bahou's family store, (2) Bahou spent several hours in the Mexico City airport waiting room before surrendering to Mexican immigration officials, (3) Bahou's mother and sister remain in Iraq, and (4) Bahou had some, but not other, pieces of identification with him here in the U.S. A careful review of the record, however, reveals that the IJ's concerns about these four components were just speculation and conjecture about how the IJ believed these events would have happened. We hold, therefore, that none of the four aspects that the IJ found questionable support the IJ's adverse credibility determination. *See Shah,* 220 F.3d at 1071; *see also Ge v. Ashcroft,* 367 F.3d 1121, 1126 (9th Cir.2004) (concluding that IJ's personal conjecture about what the Chinese authorities would or would not have done did not support adverse credibility determination).

■ Finally, the IJ reasoned that Bahou was not credible because Bahou did not secure his brother Methaq's corroborating testimony. However, as none of the purported discrepancies or implausibilities cited by the IJ support his adverse credibility finding, we must accept Bahou's testimony as credible. *See Kaur,* 379 F.3d at 890. Therefore, we find that the absence of Methaq's corroboration also does not support the IJ's adverse credibility finding. *See id.*

■ The IJ's adverse credibility finding was further undermined by his demonstrated hostile predisposition to discredit Bahou.[2] *See Garrovillas v. INS,* 156 F.3d 1010, 1015–16 (9th Cir.1998) (concluding that the record did not support the IJ's finding because of the "IJ's open, persistent, and, we hope, unprecedented hostility towards the petitioner"); *Paramasamy v. Ashcroft,* 295 F.3d 1047, 1051 (9th Cir. 2002) (finding that the IJ's adverse credi-

---

2. For example, the IJ spent nine transcript pages questioning Bahou in a prosecutorial manner about whether he was working here in the U.S. This line of questioning has no bearing on Bahou's past persecution. The IJ also interrupted direct examination to ask Bahou whether he was aware that "this is also a country that had been at war with Iraq," and "did you think that you'd be warmly received here as an Iraqi?"

bility determination reflected "the IJ's 'predisposition to discredit' the testimony, rather than any lack of credibility on the part of the witnesses.").

For all of the above reasons, each of the bases cited by the IJ in support of his adverse credibility determination fails and his determination is not supported by reasonable, substantial, and probative evidence on the record considered as a whole. Therefore, we reverse the adverse credibility determination and hold that Bahou's testimony was credible. *See Arulampalam v. Ashcroft*, 353 F.3d 679, 689 (9th Cir.2003) (rejecting adverse credibility determination and finding asylum seeker credible); *see also Kaur*, 379 F.3d at 890 (same).

The BIA alternatively held that changed country conditions were a basis for denying Bahou's appeal. This alternative holding assumes *arguendo* that Bahou established past persecution. However, where the petitioner established past persecution, the government bears the burden to show that a change in circumstances has removed the presumptive well-founded fear of future persecution. *See* 8 C.F.R. § 1208.13(b)(1)(ii). To meet this burden, our case law requires an " 'individualized analysis' of how changed conditions will affect the specific petitioner's situation." *Garrovillas*, 156 F.3d at 1017. "Information about general changes in the country is not sufficient." *Id.*

Here, no such individualized analysis occurred. The government presented no evidence whatsoever with respect to how changed country conditions would affect Bahou's fear of future persecution. Moreover, neither the IJ nor the BIA ever considered briefs or heard argument on changed country conditions. For these reasons, we reverse the BIA's finding that changed country conditions have removed Bahou's well-founded fear of future persecution.

Finally, the IJ and BIA denied Bahou's claim for withholding of removal. As with asylum, a petitioner can establish a presumption of eligibility for withholding of removal by showing past persecution. *See Baballah v. Ashcroft*, 367 F.3d 1067, 1079 (9th Cir.2004). This presumption may be rebutted only if the government shows a fundamental change in circumstances or shows that the applicant could reasonably relocate within the country of that person's nationality. 8 C.F.R. § 1208.16(b)(1). As discussed above, the government did not present any evidence of a fundamental change in circumstances in Iraq. Moreover, nothing in the record suggests that Bahou could reasonably relocate within Iraq. Accordingly, we reverse the denial of Bahou's claim for withholding of removal and remand for consideration of past persecution on the merits. *See Hanna v. Keisler*, 506 F.3d 933, 940 (9th Cir. 2007).

Based on the foregoing, we **GRANT** the petition for review as to Bahou's claims for asylum and withholding of removal and **REMAND** for further proceedings to determine whether, accepting his testimony as credible, he is eligible for relief.