**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0710n.06

No. 09-3042

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Nov 02, 2009**
LEONARD GREEN, Clerk

ORION TRIFONI,
LAURETA TRIFONI, and
DANIEL TRIFONI,
 *Petitioners*,

v.

ERIC H. HOLDER, JR.,
 *Respondent*.

On Petitioner for Review from a
Final Order of the Board of
Immigration Appeals

_____

Before: KENNEDY, ROGERS, Circuit Judges, and HOOD,[*] District Judge.

**KENNEDY, J.** Orion[1] Trifoni, as well as his wife Laureta and son Daniel, appeal an order rendered by the Board of Immigration Appeals ("Board" or "BIA") denying their application for asylum, withholding of removal, and protection under the regulations promulgated pursuant to section 242(b) of the Foreign Affairs Reform and Restructuring Act of 1998, which implement the United States' obligations under the Convention Against Torture ("CAT" or "Convention"). For the reasons set forth below, we DENY the Trifonis' petition for review.

**FACTUAL AND PROCEDURAL BACKGROUND**

---

[*]The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

[1]In Petitioners' brief to this Court, Trifoni's first name is spelled "Orion." However, in the government's brief, his name is spelled "Orian." For the purposes of this opinion, we will use the spelling used by Petitioners.

Petitioners are natives and citizens of Albania who, on June 15, 2001, sought to obtain legal admission to the United States at Miami International Airport. An Asylum Officer interviewed the Trifonis, found that they had a credible fear of persecution, and referred the cases to Immigration Court. The Immigration and Naturalization Service issued Petitioners a Notice to Appear ("NTA"), which alleged that Petitioners were subject to removal for failing to present valid entry documents and for traveling to the United States without a visa. On February 19, 2003, Orion Trifoni filed a defensive application for asylum, withholding of removal, and protection under CAT. The application also claimed Trifoni's wife and son as derivative beneficiaries.

The Immigration Judge ("IJ") assigned to Petitioners' case held hearings on February 17 and 26, 2006. At the first hearing, Petitioners admitted the factual allegations in the NTA and conceded removability, opting instead to request asylum, withholding of removal, and CAT protection. Orion Trifoni testified at the second hearing about his past in Albania and his fears of future persecution should he return. According to Trifoni, although he was not a member of the Democratic Party, he attended rallies and helped recruit others to the party. Trifoni testified that he was targeted three separate times–apparently by members of the Socialist Party who were in power in Albania at the time–for his support of the Democratic Party. On January 10, 2001, three police officers came to the cafe Trifoni owned, took him to a police van, and tried to persuade him to stop supporting the Democratic Party. When he refused, the officers beat him with batons, hit him with the back of a gun, and kicked him for over an hour, before throwing him out of the van while it was moving. Three days later, Trifoni attended a Democratic Party rally. As he was leaving the rally, several police officers pushed him and several others into an unmarked van, drove them to a police station, and detained them for one day without providing any food or water. During the detention, the

2

officers told Trifoni to end his involvement with the Democratic Party. Finally, three days after his release from police custody, Trifoni received an anonymous letter indicating that his cafe would be burned downed if he did not pay $50,000. Three nights later, Trifoni's cafe was set on fire and burned to the ground. After submitting reports to the police, Trifoni and his family decided to make plans to depart for the United States and seek asylum.

Trifoni also testified that he feared he would be persecuted by Socialist Party members and sympathizers should he be forced to return to Albania. However, on cross-examination, Trifoni acknowledged that the Democratic Party has taken control of the Albanian government since the Trifonis left the country.

Laureta Trifoni and Jim Velio, a family friend from Albania who had been granted asylum by the United States in 1992, also testified at the hearing. Each corroborated Orion Trifoni's testimony. Additionally, Velio testified that there is still tension between the Democratic Party and the Socialist Party.

The Immigration Judge also received an affidavit from Prenk Camaj, which the judge accepted as the equivalent of testimony. In the affidavit, Camaj, an Albanian scholar, stated his opinion that, upon returning to Albania, the Trifonis would be targeted due to Orion's former involvement in the Democratic Party. In support of that view, Camaj claimed that the country is "on the verge of absolute anarchy" and that the government cannot protect the Trifonis.

The 2005 U.S. Department of State Country Report on Human Rights Practices in Albania ("Country Report") was also accepted into evidence. The annual report provides specific details of the human rights conditions in Albania, including indicators of the presence (or lack thereof) of political persecution. While the 2005 Report indicated that violent crime was widespread in Albania,

3

it also noted that there were no reports of politically motivated disappearances, political detainees, or political prisoners. The Report also indicated that political freedoms and rights were generally respected by the government.

On February 26, 2007, the Immigration Judge issued an oral decision denying Petitioners' application for asylum, withholding of removal, and protection under the Convention. The judge found that Trifoni had "just barely" met his burden of establishing past persecution on account of his political opinions, which entitled Petitioners to a presumption that they had a well-founded fear of future persecution. However, the Judge also found that the change in government that occurred in Albania since the Trifonis' departure marked a change in conditions in the country that was sufficient to rebut that presumption. In so doing, the Judge relied on the 2005 Country Report indicating the lack of political hostility, as well as Orion Trifoni's own testimony about the Democratic Party's rise to power. The judge dismissed as speculative the testimony of the Trifonis, Velio, and Camaj that suggested the Trifonis would be targeted upon their return to Albania. Accordingly, the Judge denied the Trifonis' petition for relief.

Petitioners timely appealed the decision to the Board of Immigration Appeals on March 22, 2007, arguing that the IJ overrelied on the Country Report and underrelied on the testimonial evidence supplied by Petitioners and their witnesses. On December 22, 2008, after a full review of the record, the Board affirmed the decision of the IJ in full. The Board agreed with the IJ that there had been a fundamental change in conditions in Albania with the Democratic Party's rise to power and that Petitioners no longer had a well-founded fear of persecution. The Board rejected the contention that the IJ improperly weighed the evidence, noting that Petitioners' evidence related only to their past persecution and that the record evidence addressing the current conditions in

4

Albania–namely, Petitioners' own testimony, the Camaj affidavit, and the 2005 Country Report–indicated that conditions have substantially changed since Trifoni left. In a footnote following this finding, the Board also took administrative notice of the 2007 Country Report, which was released after the parties had submitted briefing and which essentially contained the same findings as those in the 2005 Report. After ruling against the Petitioners with respect to asylum, the Board found that Petitioners consequently failed to meet the higher burdens of establishing eligibility for withholding of removal or CAT protection. The Board therefore denied the appeal in full. This appeal followed.

## STANDARD OF REVIEW

In the case before us, the Board adopted the Immigration Judge's reasoning while adding its own comments. In such a case, this Court reviews the decision of the IJ and the decision of the Board as if both were the Board's decision. *See, e.g.*, *Matovski v. Gonzales*, 492 F.3d 722, 740 (6th Cir. 2007); *Gilaj v. Gonzales*, 408 F.3d 275, 282-83 (6th Cir. 2005). Factual determinations such as the ones made by the Board in this case are reviewed under the "substantial evidence" standard. *See Mikhailevitch v. INS*, 146 F.3d 384, 388 (6th Cir. 1998). Under this deferential standard of review, the Board's decision must be affirmed if it is "'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *Mullai v. Ashcroft*, 385 F.3d 635, 638 (6th Cir. 2004) (quoting *Koliada v. INS*, 259 F.3d 482, 486 (6th Cir. 2001)). "We are not entitled to reverse 'simply because [we are] convinced that [we] would have decided the case differently.'" *Id.* (quoting *Adhiyappa v. INS*, 58 F.3d 261, 265 (6th Cir. 1995)). "'Rather, in order to reverse the BIA's factual determinations, the reviewing court must find that the evidence not only supports a

5

contrary conclusion, but indeed *compels* it.'" *Id.* (quoting *Klawitter v. INS*, 970 F.2d 149, 152 (6th Cir. 1992)).

**ANALYSIS**

**I. Asylum**

To be eligible for asylum, an alien bears the burden of establishing that he or she is a "refugee" as Congress has defined that term for the purposes of asylum determinations. 8 U.S.C. § 1101(a)(42)(A). According to the relevant statute, a "refugee" is a person outside of his or her country of nationality who is unable or unwilling to return to that country "because of persecution on account of" one or more of five possible grounds: "race, religion, nationality, membership in a particular social group, or political opinion." *Id.* Under this standard, the applicant must show that he or she has a well-founded fear of future persecution or that he or she suffered actual persecution in the past. *Mullai*, 385 F.3d at 638. A showing of past persecution entitles an alien to a rebuttable presumption that he or she has a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1); *Mullai*, 385 F.3d at 638. The Government can overcome this presumption, however, if it can show by a preponderance of the evidence that there has been "a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution in the applicant's country of nationality . . . ." 8 C.F.R. § 208.13(b)(1)(i)(A). Although the BIA must perform an individualized analysis that demonstrates that the changed conditions actually eliminate the specific applicant's fear of future persecution, *see Hanna v. Keisler*, 506 F.3d 933, 938 (6th Cir. 2007), the Government can often rebut the presumption in political persecution asylum cases by showing that the applicant's persecutors are no longer in power. *See, e.g.*, *Liti v. Gonzales*, 411 F.3d 631, 639 (6th Cir. 2005); *Ndrecaj v. Mukasey*, 522 F.3d 667, 676-77 (6th Cir. 2008). If the Government establishes changed

6

circumstances, the burden shifts back to the alien, who must show that he or she has a well-founded fear of persecution despite the changed conditions. *See Liti*, 411 F.3d at 639. Such a showing requires the alien to demonstrate that he or she subjectively fears persecution and also that the fear is objectively reasonable. *See, e.g.*, *Pilica v. Ashcroft*, 388 F.3d 941, 950 (6th Cir. 2004).

In the instant case, the Government has conceded the rulings of the IJ and Board that Petitioners suffered actual persecution while they were residing in Albania, and that they are thus entitled to an initial presumption that they have a well-founded fear of future persecution should they return to Albania. Therefore, we proceed directly to whether the Board's ruling that the government successfully rebutted that presumption is supported by substantial evidence. In *Liti*, we stated: "Where an Albanian asylum applicant has demonstrated past persecution based on the applicant's anti-communist activities, the collapse of the communist regime may be a sufficient change in country conditions to rebut that presumption." *Liti*, 411 F.3d at 639; *see also Ndrecaj*, 522 F.3d at 676-77 (affirming denial of asylum of petitioner, who was a former member of Democratic Party in Albania, because political developments in the country marked a fundamental change in circumstances). We fail to see how the analysis in the instant case differs from these cases: although Petitioners show past persecution due to their anti-Socialist, pro-Democratic convictions, the Socialist Party has fallen from power and Petitioners' own party is now in control. This, combined with the other evidence of changed country conditions found in the 2005 Country Report, proves a sufficient change in country conditions to rebut the presumption. *See Liti*, 411 F.3d at 639. Petitioners attempt to rely on *Hanna* to steer this Court away from such a ruling, but that case is distinguishable from the one before us. In *Hanna*, this Court held that mere change in political power was an insufficient change in condition to rebut the presumption of future persecution on

account of the applicant's *religious* beliefs. 506 F.3d at 938. In the instant case, the rise to power of the very political power that Petitioners support is strong evidence that the changed circumstances eliminate their fear of *political* persecution.

Petitioners also argue that the BIA's determination overrelied on the 2005 Country Report and underrelied on the evidence and testimony submitted by Petitioners. We find, however, that the BIA's determination was perfectly reasonable in light of the full record. The Board admittedly relied heavily on the 2005 Country Report that details the human rights landscape in Albania with respect to political persecution. But Petitioners themselves concede that such reports "are generally the best source of information on conditions in foreign nations" for review of asylum cases.[2] *See Mullai*, 385 F.3d at 639 (internal quotation marks omitted). More importantly, the Board did not merely rely on this Report but also adequately considered the other evidence before it. It accurately noted that Petitioners themselves testified that conditions have changed in Albania with the rise of the new, Democratic Party-controlled government. And, with nothing other than uncorroborated assertions from Mr. Camaj and the Petitioners that the ousted Socialists might attack Petitioners upon their return to Albania, it was reasonable for the Board to affirm the IJ's dismissal of such a scenario as too speculative. *See Mapouya v. Gonzales*, 487 F.3d 396, 412 (6th Cir. 2007) ("[A]n applicant cannot rely on speculative conclusions or mere assertions of fear of possible persecution, but instead must offer reasonably specific information showing a real threat of individual persecution."). Thus, the record evidence comes nowhere near the level necessary for this Court to be able to say that any reasonable adjudicator would be compelled to rule differently than the Board did here.

---

[2]Indeed, Petitioners themselves were the ones who submitted the Country Reports to the Immigration Judge. We thus find it somewhat inconsistent for Petitioners now to be challenging the value of those Reports.

Since Petitioners cannot show that the Board was wrong to affirm the IJ's ruling as to the changed circumstances in Albania, Petitioners are left only to show that they have a well-founded fear notwithstanding the changed circumstances. Petitioners seem to have combined any argument with respect to this element with their argument regarding changed circumstances. Accordingly, we affirm the findings of the BIA as to this element for the same reasons as above.

## II. Withholding of Removal

Petitioners also seek withholding of their removal from the United States. Under the relevant immigration statute, Petitioners are eligible for withholding of removal only if they can establish a "clear probability" that they would be persecuted on account of actual or imputed political opinion should they return to Albania. 8 U.S.C. §1231(b)(3)(A). Under this standard, Petitioners must show that it is more likely than not that their "li[ves] or freedom would be threatened" on account of their opinion. *See id.* This standard is more stringent than the "well-founded fear" standard for asylum claims, *INS v. Cardoza-Fonseca*, 480 U.S. 421, 430-31 (1987), which means that an applicant who cannot meet the asylum burden necessarily cannot meet the burden for withholding of removal. *See Singh v. Ashcroft*, 398 F.3d 396, 401 (6th Cir. 2005). Accordingly, because Petitioners in the instant case have failed to establish a successful asylum claim, they also cannot establish an entitlement to withholding of removal. *See id.*

## III. Relief Under the Convention Against Torture

Petitioners also seek relief under the Convention Against Torture. To qualify for relief, an applicant has the burden of showing that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). As with the standard for withholding of removal, the applicant's burden of proof with respect to CAT relief is more stringent

9

than the burden for establishing a "well-founded fear" in asylum claims. *See, e.g.*, *Hassan v. Gonzales*, 403 F.3d 429, 435 (6th Cir. 2005). Thus, because Petitioners have failed to establish a successful asylum claim, they also cannot establish an entitlement to relief under the Convention. *See id.*

## IV. Due Process Violation

Finally, embedded within Petitioners' asylum argument is a separate claim that the Trifonis' due process rights were violated when the Board took administrative notice of the 2007 State Department Country Report without giving Petitioners prior notice and an opportunity to rebut the report. "Reviewing an alleged due process violation is a two-step inquiry: first, whether there was a defect in the removal proceedings; and second, whether the alien was prejudiced because of it." *Vasha v. Gonzales*, 410 F.3d 863, 872 (6th Cir. 2005). However, this Court has often avoided the merits of the constitutional question if there is no prejudice to the alien. *See, e.g.*, *Warner v. Ashcroft*, 381 F.3d 534, 539 (6th Cir. 2004). In the instant case, we also opt to avoid determining whether Petitioners stated a due process violation because we find that any potential error did not prejudice them.

When analyzing the prejudice prong, this Court "inquires, ex post, whether due process was violated by evaluating whether the alien's claims could have supported a different outcome." *Sako v. Gonzales*, 434 F.3d 857, 864 (6th Cir. 2006). In the case before us, Petitioners simply cannot show that the Board's notice of the 2007 Report affected the outcome of the case at all. We have already noted that there is substantial evidence in the record to support the Board's determination notwithstanding the 2007 Report's inclusion in the Board's decision. *See supra* Part I. Additionally, the Board's opinion makes clear that its notice of the 2007 Report, which is buried in a minor

footnote, was not a major factor in its decision to uphold the IJ's ruling. Indeed, the Board specifically explains that the 2007 Report merely echoes the information found in the 2005 Report, a document which was entered into evidence and that both parties had a chance to address. Thus, the ample amount of evidence on which the Board relied in making its decision, combined with the relative unimportance that the Board placed on its notice of the 2007 Report, leads us to conclude that the notice did not affect the outcome of the proceedings and that Petitioners consequently suffered no prejudice. Petitioners' due process claim, therefore, is rejected.

## CONCLUSION

For the foregoing reasons, we DENY the Trifonis' petition for review.

11