NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0048n.06

No. 19-4143

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jan 25, 2021
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| YASEMEEN SHAFO, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| ROBERT M. WILKINSON, Acting Attorney General, | ) | APPEALS |
| | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

BEFORE: SUTTON, BUSH, and MURPHY, Circuit Judges.

MURPHY, Circuit Judge. Yasemeen Shafo became a lawful permanent resident of the United States when she was a small child. As an adult, she has committed a series of crimes (from arson to home invasion), so the government sought to remove her to her native Iraq. Given her crimes, Shafo could seek relief from this removal only under the Convention Against Torture. The Board of Immigration Appeals held that she had not made the showing required for this relief: that she was likely to be tortured by or with the acquiescence of the Iraqi government. We agree with the Board that the record contains "profoundly mixed" evidence about the conditions in Iraq—a conclusion that all but bars judicial intervention under our deferential standard of review. *See Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020). We thus deny Shafo's petition for review.

I

Yasemeen Shafo, a native and citizen of Iraq, has lived in the United States since 1977 when she was two years old. While still in Iraq, Shafo was baptized into the Chaldean Catholic Church, a Christian religious community that has been in Iraq for centuries. She and her mother fled the country a short time later, after her father died. They were admitted into the United States as lawful permanent residents.

In 2007 and 2008, Shafo was convicted in Michigan state court of arson, embezzlement, and stealing a financial-transaction device. Shafo had set fire to her failing business in an attempt to get the insurance proceeds. She subsequently allowed a friend to steal over $1,000 worth of merchandise from the Macy's at which she worked and used a credit card that a customer had left behind at another friend's store. These crimes led the government to charge Shafo with being removable to Iraq. *See* 8 U.S.C. § 1227(a)(2)(A)(ii)–(iii). Shafo conceded her removability but applied for "withholding of removal." *See id.* § 1231(b)(3)(A). She asserted that her life would be threatened in Iraq because of her Chaldean Christian religion and the then-ongoing expansion of ISIS. In 2010, an immigration judge granted Shafo withholding of removal.

Six years later, however, Shafo was convicted of home invasion in the second degree and sentenced to 5 to 25 years' imprisonment. The government moved to terminate the previous grant of withholding of removal on the ground that Shafo had committed a "particularly serious crime" and was now ineligible for that relief. *Id.* § 1231(b)(3)(B)(ii); *see id.* §§ 1101(a)(43)(G), 1158(b)(2)(B)(i). The immigration judge agreed.

Shafo thus applied for relief under the Convention Against Torture, which bars removal to a place where an immigrant "is more likely than not to be tortured." 8 C.F.R. § 1208.17(a). Shafo argued that "her status as an Americanized Christian woman who has mixed-race children [would]

make[] her a target for abuse" by ISIS, by the Popular Mobilization Forces that arose to fight ISIS, or by other Muslims living in Iraq. But the Convention Against Torture's definition of "torture" required Shafo to prove that any harm would be caused "by" or with the "acquiescence of" Iraqi government officials. *Id.* § 1208.18(a)(1). The immigration judge originally denied Shafo's claim because she failed to make this state-action showing. Yet the judge soon reconsidered and granted Shafo relief based on "newly discovered" evidence: expert declarations and other reports that had been submitted in a different federal case. *See Hamama v. Adducci*, 261 F. Supp. 3d 820 (E.D. Mich. July 24, 2017), *rev'd* 912 F.3d 869 (6th Cir. 2018).

On appeal, the Board of Immigration Appeals held that the immigration judge should not have relied on new evidence without admitting it into the record and giving the parties a chance to respond. The Board remanded the case so that the judge could do so.

On remand, the immigration judge added this evidence into the record and allowed the parties to introduce additional evidence. The government submitted three expert declarations. These declarations caused the immigration judge to reverse course again. The judge found them "more substantively persuasive" and "more strongly corroborated by available country reports" than those on which he had previously relied. He concluded that any risk of harm from ISIS was reduced by the Iraqi government's successful combat efforts and that, regardless, those efforts showed that the government did not "acquiesce" in ISIS's violence. The judge next explained that the Popular Mobilization Forces had precipitated only "scattered instances of abuse" and that the government had "taken concrete steps to investigate and prosecute" those abuses. The judge lastly noted that Shafo's "Americanization" could help her because it would show that she had no connection to ISIS, adding that Western influences were not uncommon in Iraq. The judge thus

3

denied Shafo's motion because she had not shown that Iraqi government officials would likely torture her or consent to her torture.

This time, the Board upheld the immigration judge's decision. It concluded that the judge had made reasonable fact findings based on "profoundly mixed evidence."

Shafo now petitions our court for review. In a case like this one in which the Board issued its own opinion but adopted the immigration judge's reasoning, we review both decisions. *Kilic v. Barr*, 965 F.3d 469, 472 (6th Cir. 2020); *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009).

## II

Shafo raises two legal challenges and two factual challenges to the Board's order. Before addressing her claims, we consider our jurisdiction. The Board found Shafo removable because she had committed an "aggravated felony." 8 U.S.C. § 1227(a)(2)(A)(iii). We generally lack jurisdiction to review a "final order of removal" predicated on this ground, but we retain jurisdiction to review any question of law embedded in such an order. *Id.* § 1252(a)(2)(C)–(D). We had previously held that this jurisdictional dichotomy applied to a claim seeking relief under the Convention Against Torture and so allowed us to review only legal challenges, not factual challenges, to an order denying that relief. *Kilic*, 965 F.3d at 473. But the Supreme Court recently concluded that an order under the Convention Against Torture does not merge into the "final order of removal" and so does not fall within § 1252(a)(2)(C)'s jurisdictional limit on our review. *See Nasrallah v. Barr*, 140 S. Ct. 1683, 1690–92 (2020). Section 1252(a)(2)(C) thus does not deprive us of jurisdiction to review any of Shafo's claims. *See Kilic*, 965 F.3d at 473.

## A

Start with Shafo's two legal challenges. To be eligible for relief under the Convention Against Torture, immigrants must prove that they would more likely than not "be tortured" in their

country of removal.  8 C.F.R. § 1208.16(c)(2).  Regulations implementing the Convention Against Torture define "torture" to require, among other elements, that severe pain or suffering be "inflicted *by*, or at the instigation of, or with the consent or *acquiescence* of, a public official or other person acting in an official capacity."  *Id.* § 1208.18(a)(1) (emphases added); *Marqus v. Barr*, 968 F.3d 583, 587 (6th Cir. 2020).  The immigration judge in Shafo's case found that she had not shown that the Iraqi government would acquiesce in any harm from ISIS.  And he found it unlikely that the Popular Mobilization Forces would harm her.  Shafo now argues that the judge wrongly failed to "aggregate" the risk of torture from all sources and violated due process by taking administrative notice of a State Department report that no party submitted into the record.

*"Aggregate" Analysis*.  As we recently noted, other courts have required the Board to "consider the aggregate probability of torture from independent sources or for independent reasons, rather than assess the probability of torture from each source or for each reason separately."  *Marqus*, 968 F.3d at 589 (citing cases).  That is, the isolated probability of harm from *one* source need not exceed 50% (be more likely than not) as long as the combined probability of harm from *all independent* sources exceeds that threshold.  *See Shakkuri v. Barr*, 780 F. App'x 286, 291 (6th Cir. 2019).  (The probability rules are different if the sources are *inter*dependent.  *Id.* at 292.)  Here, for example, Shafo says the immigration judge failed to consider the combined risk that she would be harmed either by ISIS or by the Popular Mobilization Forces.

Yet, as we held for a similar claim, we cannot consider Shafo's aggregation argument because she failed to raise it with the Board.  *See Al-Koorwi v. Barr*, __ F. App'x __, 2020 WL 6747439, at *4–5 (6th Cir. Nov. 17, 2020).  We "may review a final order of removal only if" an immigrant "has exhausted all administrative remedies available to the alien as of right[.]"  8 U.S.C. § 1252(d)(1).  We have interpreted this exhaustion statute to compel immigrants to raise with the

Board "the specific issue" that they seek to assert in court. *Singh v. Rosen*, __ F.3d __, 2021 WL 56151, at *10 (6th Cir. Jan. 7, 2021). And here, the government correctly invokes the statute because Shafo failed to allege that the immigration judge had committed an aggregation error in either her notice of appeal or brief with the Board. *See id.*

In response, Shafo vaguely implies that the Supreme Court's recent decision in *Nasrallah* eliminates any statutory exhaustion requirement for claims under the Convention Against Torture. The exhaustion statute might not cover these claims, this argument goes, because it applies only to a "final order of removal," 8 U.S.C. § 1252(d)(1), and *Nasrallah* held that claims under the Convention Against Torture do "not merge into the final order of removal," 140 S. Ct. at 1691. Yet we required exhaustion for claims under the Convention Against Torture in at least one case after *Nasrallah*. *Al-Koorwi*, 2020 WL 6747439, at *4–5. The petitioner in that case did not appear to raise the question whether *Nasrallah* eliminated the exhaustion requirement for claims under the Convention Against Torture. So we did not address the argument there. *Id.* Here too, we opt not to decide *Nasrallah*'s effect on the exhaustion statute. Shafo has forfeited this argument because the conclusory sentence in her reply brief failed to adequately develop it. *See Engler v. Arnold*, 862 F.3d 571, 577 (6th Cir. 2017).

Shafo also suggests that we should excuse her failure to exhaust her aggregation argument because she has litigated these immigration proceedings with a "complete lack of resources" while imprisoned. But "'mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion' to create" equitable exceptions like the one that Shafo seeks. *Singh*, 2021 WL 56151, at *10 (quoting *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016)). Besides, the Board granted Shafo an extension of time to file her brief, which enabled her to submit a thorough one. The exhaustion statute thus bars our review of her aggregation argument.

*State Department Report*.  Shafo next argues that the immigration judge violated her due-process rights by taking "administrative notice" of the State Department's 2018 Human Rights Report on Iraq without allowing her to review and respond to this report.  Many decisions recognize the propriety of the Board or an immigration judge taking administrative notice of official reports of this ilk, although some require the agency to give the parties notice and an opportunity to respond in some circumstances.  *See Liu Yanni v. U.S. Att'y Gen.*, 781 F. App'x 837, 840 (11th Cir. 2019) (per curiam) (discussing circuit split); *see also, e.g.*, *Hai Quang Lin v. Att'y Gen. of U.S.*, 721 F. App'x 123, 127–28 (3d Cir. 2018); *Shao v. Mukasey*, 546 F.3d 138, 166–68 (2d Cir. 2008).  (The regulations have recently been amended to require the Board to give notice in some situations.  85 Fed. Reg. 81588, 81602–04 (Dec. 16, 2020); 8 C.F.R. § 1003.1(d)(3)(iv)(B).)  We need not decide whether the immigration judge's failure to notify Shafo about this report caused any unconstitutional surprise.  Like the Board, we conclude that she failed to show prejudice.  *See Trifoni v. Holder*, 351 F. App'x 19, 25 (6th Cir. 2009).

To establish prejudice in this immigration setting, an immigrant must show that an alleged due-process violation "led to a substantially different outcome" from what would have resulted without the violation.  *Marqus*, 968 F.3d at 591 (citation omitted); *see also, e.g.*, *Cabrera-Ramos v. Gonzales*, 233 F. App'x 449, 457 (6th Cir. 2007).  Shafo has not made this showing.  To begin with, Shafo has been given the opportunity to object to the immigration judge's use of this report both with the Board and now with us.  But she has never explained what she would have done differently if the immigration judge had notified her about the report before issuing his decision.  Shafo has not, for example, identified a single fact asserted in this report that she would have attempted to disprove with additional evidence if she had known the judge would rely on it.  Nor was the report "the sole basis for denying [Shafo] relief."  *Shao*, 546 F.3d at 167.  To the contrary,

the immigration judge relied more on the government's three expert declarations than he did on the report. And the three declarations would have supported the immigration judge's decision even absent this report. *See Trifoni*, 351 F. App'x at 25. Lastly, the parties submitted into the record earlier versions of the report, including the 2017 version, which further undermines any claim of unfair surprise. *Cf. Hai Quang Lin*, 721 F. App'x at 127–28; *Yero v. Holder*, 355 F. App'x 555, 556–57 (2d Cir. 2009) (order).

Shafo responds with "what's good for the goose is good for the gander": The Board reversed the immigration judge for relying on outside-the-record evidence from the separate federal case when *granting* relief, so neutral principles required the Board to reverse the judge for relying on outside-the-record evidence when *denying* it. A fair point. But the two situations are not similar. For one thing, when originally granting Shafo relief, the immigration judge relied on evidence (such as expert testimony) that was reasonably subject to dispute, unlike the report at issue here. *Cf. Vasha v. Gonzales*, 410 F.3d 863, 874 n.5 (6th Cir. 2005) (Moore, J., opinion). For another thing, the government's original appeal to the Board identified facts in the outside-the-record evidence that it would dispute if given the opportunity. On remand, the government followed through by introducing evidence disputing these facts. It thus proved prejudice in a way that Shafo has not.

B

Turn to Shafo's two factual challenges. *First*, Shafo argues that the immigration judge wrongly credited the government's experts over her own on the question whether she would likely be tortured with the acquiescence of the Iraqi government if removed to the country. Our cases make clear that the agency's conclusion about an immigrant's likelihood-of-future harm is a factual determination. *See Shabo v. Sessions*, 892 F.3d 237, 241 (6th Cir. 2018), *overruled on*

*other grounds by Nasrallah*, 140 S. Ct. at 1690–92. And while *Nasrallah* now allows us to review a challenge to this type of factual ruling, that decision requires us to do so under a "highly deferential" standard of review. 140 S. Ct. at 1692. The factual finding is "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). When the evidence could reasonably point in either direction, therefore, we must defer to the agency's choice. *See Al-Koorwi*, 2020 WL 6747439 at \*3.

This standard forecloses Shafo's factual challenge because, as the Board noted, the record in this case includes "profoundly mixed" evidence. To be sure, Shafo's experts detailed risks of violence against Chaldean Christians or former American residents from ISIS or the Popular Mobilization Forces and attempted to tie this violence to the Iraqi government. But the government submitted its own contrary evidence and experts. To cite one example, the evidence showed that thousands of Chaldean Christians have successfully returned to Iraq with government assistance. Shafo essentially asks us to reach our own credibility finding about the conflicting experts. Her request misunderstands our narrow standard of review. It is not enough for her to identify evidence that "*supports*" her desired factual finding; she must identify evidence that "*compels*" that finding. *See INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992). She cannot do so on this record.

*Second*, Shafo argues that the Board focused too much on her risk of harm as a Chaldean Christian and failed to adequately address the likelihood that she would face torture as an "Americanized woman." This claim suffers from the same problem: the standard of review. As for Shafo's long residence in the United States, substantial evidence supported the Board's conclusion that her "American background would not likely lead to her being tortured in Iraq." Government experts opined, for example, that the fact that Iraqi immigrants are returning from "the West makes them almost certainly innocent of any ISIS connection, which will be the primary

concern of Iraqi authorities receiving them." As for Shafo's sex, substantial evidence likewise supported the Board's conclusion that she relied only on general evidence of discrimination and violence against women and that this evidence fell short of establishing a "particularized" risk of harm. The State Department's country reports do not suggest that this type of violence is so pervasive that *all* women in Iraq have a greater than 50% chance of being subjected to harm by or with the acquiescence of the Iraqi government. 8 C.F.R. § 1208.18(a)(1). The Board thus could reasonably conclude that Shafo needed to identify a "particularized" threat to her personally. *See Saleh v. Barr*, 795 F. App'x 410, 419–20 (6th Cir. 2019). Even on appeal, however, she continues to rely only on general country conditions.

For both of Shafo's factual claims, she ends by criticizing the immigration judge because he reaching diametrically different conclusions before and after the Board's remand. But, contrary to her claim, the evidence was not the "same" after the remand as it was before. The judge's post-remand decision took account of the government's expert declarations, declarations that the judge found more persuasive. Because the Board correctly held that these declarations provided substantial evidence to support the immigration judge's conclusion, we must deny Shafo's petition for review.