RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 20a0210p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

DIJANA KILIC,

*Petitioner*,

*v.*

WILLIAM P. BARR, Attorney General,

*Respondent*.

No. 19-4076

On Petition for Review from the Board of Immigration Appeals;
No. A 077 465 716.

Decided and Filed: July 10, 2020

Before: DONALD, THAPAR, and NALBANDIAN, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:** Sufen Hilf, HILF & HILF, PLC, Troy, Michigan, for Petitioner. Leslie McKay, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

## OPINION

_____

THAPAR, Circuit Judge. Dijana Kilic is a national of Bosnia and Herzegovina and was a lawful permanent resident of the United States. A Michigan court sentenced Kilic to five to twenty years of imprisonment for conspiracy to commit armed robbery. Under the Immigration and Nationality Act, that made her deportable. *See* 8 U.S.C. §§ 1101(a)(43)(G), (U), 1227(a)(2)(A)(iii). Kilic sought removal relief but an immigration judge denied it. The Board of Immigration Appeals affirmed.

Kilic now seeks review of the Board's decision.  We review the Board's opinion as a final agency decision, and also review the immigration judge's opinion (since the Board adopted its findings and reasoning in full).  *See Gonzalez-De Leon v. Barr*, 932 F.3d 489, 492 (6th Cir. 2019).

Kilic argues that she should have been granted two forms of relief:  (1) a waiver of inadmissibility under § 212(h) of the Immigration and Nationality Act (codified at 8 U.S.C. § 1182(h)); and (2) deferral of removal under the Convention Against Torture.  Both arguments fail.

*Waiver of Inadmissibility.*  Immigration law draws a distinction between grounds of inadmissibility and grounds of deportability.  *Compare* 8 U.S.C. § 1182 (inadmissibility), *with id.* § 1227 (deportability).  In broad terms, if someone is inadmissible, it means they cannot receive a visa or enter the country legally.  *See id.* §§ 1101(a)(13)(A), 1182(a).  By contrast, if someone is deportable, it means they can be removed *after* being lawfully admitted into the country.  *Id.* § 1227(a).  The two sets of grounds overlap in some areas while diverging in others. *Compare, e.g.*, *id.* § 1182(a)(2) (listing criminal grounds of inadmissibility), *with id.* § 1227(a)(2) (listing criminal grounds of deportability).

Why does this difference matter?  Well, in some cases, one set of grounds is more flexible than the other.  For example, § 212(h) of the Act permits the Attorney General to waive certain criminal grounds of inadmissibility if (among other things) an alien shows inadmissibility would result in "extreme hardship" to a citizen or green-card-holding family member.  *Id.* § 1182(h)(1)(B).  But there is no directly analogous waiver for *deportability* grounds.

Long story short, that means that to benefit from a § 212(h) waiver, a deportable alien must first "assimilate[] to the position of an applicant for admission"—either by (1) voluntarily leaving the country and then seeking readmission or (2) applying for adjustment of status. *Matter of Rivas*, 26 I. & N. Dec. 130, 132 (B.I.A. 2013) (quoting *Poveda v. U.S. Att'y Gen.*, 692 F.3d 1168, 1177 (11th Cir. 2012)); *see also Jankowski-Burczyk v. INS*, 291 F.3d 172, 175 & n.2 (2d Cir. 2002) (explaining the statutory mechanics in more detail).

Here, Kilic sought a § 212(h) waiver but was denied. After all, she had not left the country to apply for readmission and was ineligible for adjustment of status. She now argues that the conditions for § 212(h) relief violate equal protection by irrationally favoring aliens who have left the country over those who apply for the waiver while in the United States.

Courts review federal laws classifying aliens under the rational-basis test. *See Ashki v. INS*, 233 F.3d 913, 920 (6th Cir. 2000). And the classification here easily passes that standard.

Several of our sister circuits have already explained why. *See Seepersad v. Sessions*, 892 F.3d 121, 125 (2d Cir. 2018) (per curiam); *Poveda*, 692 F.3d at 1177–78; *Cabral v. Holder*, 632 F.3d 886, 893–94 (5th Cir. 2011); *Klementanovsky v. Gonzales*, 501 F.3d 788, 791–94 (7th Cir. 2007); *accord Montano v. Att'y Gen.*, 350 F. App'x 643, 647 (3d Cir. 2009) (per curiam).

In essence, Congress has created "an incentive" (the opportunity to seek a § 212(h) waiver) for certain deportable criminals to "voluntarily depart at their own expense." *Klementanovsky*, 501 F.3d at 793. That saves the taxpayer the expense of a removal proceeding, keeps potentially-dangerous criminals outside the country while they seek permission to re-enter, and discourages attempts to elude immigration authorities. *Id.* at 792–93. In short, Congress had "any number of rational reasons" to draw the distinction Kilic challenges. *Id.* at 794. Thus, her inability to seek a § 212(h) waiver did not violate equal protection.

*Convention Against Torture Deferral of Removal.* Under the Convention Against Torture, an alien may not be removed to a country where she would probably be tortured. *See* 8 C.F.R. §§ 208.16(c), 208.17(a). "Torture" refers to certain "extreme form[s] of cruel and inhuman treatment" at the hands of or "with the consent or acquiescence of" government officials. *Id.* § 208.18(a)(1)–(2); *see also id.* § 208.18(a)(3)–(8) (further specifying the definition of "torture").

Here, the immigration judge found that Kilic failed to show that she was likely to be tortured in Bosnia, and the Board upheld that finding. Kilic now argues that the Board erred in analyzing her claim and that she *did* show she would probably be tortured.

First things first:  we must determine the bounds of our subject-matter jurisdiction.  Kilic is removable for a conviction listed in 8 U.S.C. § 1252(a)(2)(C), one of the Immigration and Nationality Act's jurisdiction-stripping provisions.  Until recently, that would have meant that our review was strictly limited to Kilic's *legal* challenges, excluding any review of a "factual determination" (such as whether Kilic had shown a probability of future torture).  *Shabo v. Sessions*, 892 F.3d 237, 240–41 (6th Cir. 2018); *see also Ventura-Reyes v. Lynch*, 797 F.3d 348, 356–61 (6th Cir. 2015); 8 U.S.C. § 1252(a)(2)(D).  But the Supreme Court recently held that § 1252(a)(2)(C) does not cover challenges to denials of Convention Against Torture relief. *Nasrallah v. Barr*, 140 S. Ct. 1683, 1690–92 (2020).  The government agrees that *Nasrallah* directly abrogated our past holdings to the contrary.  Thus, we have jurisdiction to consider Kilic's legal and factual challenges.

We review legal issues de novo (subject to administrative-law deference principles). *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009).  And we review the Board's factual findings under the "highly deferential" substantial-evidence test, meaning those findings stand "unless any reasonable adjudicator would be compelled" to disagree.  *Nasrallah*, 140 S. Ct. at 1692 (cleaned up).  In the end, Kilic offers no winning argument on either front.

Start with law:  specifically, whether the Board "failed to apply a required test or legal standard." *Ventura-Reyes*, 797 F.3d at 360.  Kilic appears to suggest that the Board ignored certain evidence or certain parts of her claim, but this suggestion is meritless.  Both the Board and the immigration judge (1) articulated the correct legal standards, (2) accurately described Kilic's claim, and (3) explained in fair detail why they did not think her evidence established a likelihood of torture.  On top of that, the immigration judge provided a thorough summary of Kilic's testimony and that of her family members.  In short, nothing suggests that the agency cut any illegal corners in considering Kilic's claim.  The very most Kilic can show is that the opinions don't exhaustively analyze every individual piece of evidence and each individual subargument.  And that's perfectly fine:  "the Board need not list every possible positive and negative factor in its decision," much less "write an exegesis on every contention." *Scorteanu v. INS*, 339 F.3d 407, 412 (6th Cir. 2003) (cleaned up).  So too here.

That just leaves the facts.  The immigration judge made (and the Board affirmed) two dispositive findings:  (1) Kilic failed to show that she would probably suffer harm *severe* enough to qualify as torture; and (2) she failed to show that *government officials* would inflict or ratify that harm.  Substantial evidence supports both findings.

To be sure, the record shows that Kilic's family ties, criminal past, and other aspects of her life in this country may lead to stigma in Bosnia.  But nothing in the record proves that any mistreatment is *more likely than not* to rise to the extreme level of torture.  *See* 8 C.F.R. § 208.18(a)(1)–(2) (noting that torture "is an *extreme* form of cruel and inhuman treatment," involving the intentional infliction of "*severe* pain or suffering," and excludes "lesser forms of cruel, inhuman or degrading treatment" (emphases added)).  It's true that Bosnia has a history of ethnic and religious strife.  Yet that tragic history does not show that Kilic is *personally* likely to suffer any extreme form of discrimination.  *See, e.g.*, *Almuhtaseb v. Gonzales*, 453 F.3d 743, 751 (6th Cir. 2006).  And while Kilic and her family testified that they would fear for her in Bosnia, their subjective fears (however understandable) "are both too generalized and too speculative to form the basis of relief." *Cruz-Samayoa v. Holder*, 607 F.3d 1145, 1156 (6th Cir. 2010).

The most specific fear Kilic articulates is her fear of sexual abuse.  While sexual violence can clearly constitute torture, Kilic fails to show that she is *likely* to suffer such violence.  To substantiate her fear, she points to a report showing that Bosnian sex workers are often the victims of violence (sexual and otherwise).  But Kilic does not claim that she will *be* a sex worker in Bosnia and she offers no evidence to support her claim that she will be *perceived* as one.  Simply put, the record does not compel the conclusion that Kilic will likely suffer mistreatment rising to the level of torture.

Still less does the record compel the conclusion that *government officials* would participate or acquiesce in such mistreatment.  Kilic points to evidence that police officers sometimes abuse sex workers or fail to protect them.  But again, this evidence is of dubious relevance to Kilic because she does not claim to be a sex worker.  That leaves only her family members' predictions that the police would turn a blind eye to crimes committed against her. The Board reasonably found that this speculative testimony did not carry Kilic's burden of proof. We cannot say the record compels the opposite conclusion.

We deny Kilic's petition for review and deny her outstanding motion for a stay of removal as moot.