NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0006n.06

No. 20-3396

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

GILBERTO GIL-CERQUEDA,

    Petitioner,

v.

JEFFREY A. ROSEN, Acting U.S.
Attorney General,

    Respondent.

FILED
Jan 05, 2021
DEBORAH S. HUNT, Clerk

ON PETITION FOR REVIEW FROM
THE BOARD OF IMMIGRATION
APPEALS

BEFORE:    CLAY, GILMAN, and THAPAR, Circuit Judges.

**CLAY, Circuit Judge.** Petitioner Gilberto Gil-Cerqueda filed an application for withholding of removal, 8 U.S.C. § 1231(b)(3)(A), and protection under the Convention Against Torture ("CAT"), 8 C.F.R. 208.16(c). An immigration judge ("IJ") denied the application and ordered Gil-Cerqueda removed from the United States to Mexico. The Board of Immigration Appeals ("BIA") dismissed Gil-Cerqueda's appeal, and he subsequently filed this petition seeking review of the BIA's order. For the reasons set forth below, we **DENY** the petition for review.

BACKGROUND

Gil-Cerqueda is a native and citizen of Mexico. In March 2002, he entered the United States without admission. Ten years later, the Department of Homeland Security issued Gil-Cerqueda a Notice to Appear, charging him with removability as an "alien present in the United States who

has not been admitted or paroled" under 8 U.S.C. § 1182(a)(6)(A)(i). (Notice to Appear, A.R.# 413.) At a hearing before an IJ, Gil-Cerqueda, through counsel, conceded removability.

Gil-Cerqueda subsequently filed an application for withholding of removal and CAT protection.[1] The application noted that he was seeking withholding of removal based on "[m]embership in a particular group." (I-589, A.R.# 225.) In an attached affidavit, Gil-Cerqueda explained that, in Mexico, he had worked as a "self-employed transportation worker" until he learned from a friend that Joaquin Montiel, owner of a rival transportation company, had "plans to kill" him because Montiel believed that Gil-Cerqueda "was 'stealing' his clients." (Aff. of Gilberto Gil-Cerqueda, A.R.# 235.)

At a hearing before the IJ, Gil-Cerqueda provided more details about threats he received from Montiel. First, Montiel told him "to move to the side" and "not to get involved anymore with his clients." (May 7, 2018 Hr'g Tr., A.R.# 111.) Next, Montiel "sent two different people at different [times] to threaten [him] with death." (*Id.* at 111–12.) Gil-Cerqueda also testified that Montiel "had money, and he was very respected," and that he did not report the three threats to the police because Montiel was "very powerful, and he was very connected, and he had a lot of [connections] within the police." (*Id.*) Gil-Cerqueda knew about Montiel's connections with the police because he saw Montiel "frequently visiting the police office – the officers. And they used to go out – they used to spend a lot of time together, and they used to ride to restaurants frequently." (*Id.* at 113, 116–17.) Gil-Cerqueda also explained that he knew Montiel to be a violent person because Montiel's employees said that "he used to mistreat them a lot, that he was very rude, and he was very violent with them." (*Id.* at 113.) According to Gil-Cerqueda, Montiel was also associated with narcotics traffickers. Because Gil-Cerqueda "was afraid that something might

---

[1] Although Gil-Cerqueda's brief has some references to asylum, the record is clear that he only applied for withholding of removal and protection under the CAT.

happen to [him]" as a result of Montiel's threats, he decided to leave Mexico. (*Id.* at 114–15.) He explained that he came to the United States instead of moving elsewhere in Mexico "because of job opportunities, and also, to be very far away from Mexico, and also, because I was aware that [Montiel] had contacts with the police, and with narco traffickers." (*Id.* at 115.)

Despite the passage of time since Gil-Cerqueda left Mexico, he testified that he believed Montiel would harm him if he returned because Montiel "had a lot of resentment against [him], and he is somebody that is bad, and he's involved with the narco traffickers." (*Id.* at 117–18.) Moreover, Gil-Cerqueda did not think that the police would protect him because of police corruption and Montiel's connections with the police. Gil-Cerqueda also testified about a heart condition, and the difficulty he would have obtaining medication in Mexico.

In his oral decision, the IJ explained that he found Gil-Cerqueda to be "a credible witness." (Oral Decision of IJ, A.R.# 63.) Nonetheless, the IJ held that Gil-Cerqueda failed to establish eligibility for withholding of removal and relief under the CAT. Gil-Cerqueda appealed the IJ's decision to the BIA. He also argued that the IJ violated his due process rights. The BIA dismissed Gil-Cerqueda's appeal. This timely appeal followed.

## DISCUSSION

"Where the BIA reviews the immigration judge's decision and issues a separate opinion, rather than summarily affirming the immigration judge's decision, we review the BIA's decision as the final agency determination." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009) (citing *Morgan v. Keisler*, 507 F.3d 1053, 1057 (6th Cir. 2007)). "To the extent the BIA adopted the immigration judge's reasoning, however, this Court also reviews the immigration judge's decision." *Id.* (citing *Patel v. Gonzales*, 470 F.3d 216, 218 (6th Cir. 2006)).

"We apply the same standard of review for withholding of removal claims made under the Immigration and Nationality Act and for requests for protection under the Convention Against Torture." *Kamar v. Sessions*, 875 F.3d 811, 817 (6th Cir. 2017). "The IJ and the BIA's factual findings are reviewed under the substantial-evidence standard." *K. H. v. Barr*, 920 F.3d 470, 475 (6th Cir. 2019) (citing *Ben Hamida v. Gonzales*, 478 F.3d 734, 736 (6th Cir. 2007)). "[T]his is a deferential standard under which the court cannot reverse the board's determination simply because it would have decided the matter differently." *Gishta v. Gonzales*, 404 F.3d 972, 978 (6th Cir. 2005). Factual findings of the IJ and the BIA "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *K. H.*, 920 F.3d at 475 (quoting *Slyusar v. Holder*, 740 F.3d 1068, 1072 (6th Cir. 2014)). "Questions of law are reviewed *de novo*, but substantial deference is given to the BIA's interpretation of the INA and accompanying regulations." *Khalili*, 557 F.3d at 435 (citing *Morgan*, 507 F.3d at 1057).

## I.      Withholding of Removal

"Withholding of removal . . . is mandatory if an alien shows a 'clear probability' that, if she was removed, her 'life or freedom would be threatened' on a protected ground such as her 'race, religion, nationality, membership in a particular social group, or political opinion.'" *Kamar*, 875 F.3d at 817 (quoting 8 U.S.C. § 1231(b)(3)(A)). "A 'clear probability' in this context means that the applicant would 'more likely than not' be subject to persecution." *Bi Qing Zheng v. Lynch*, 819 F.3d 287, 294 (6th Cir. 2016) (quoting *Al–Ghorbani v. Holder*, 585 F.3d 980, 993–94 (6th Cir. 2009)). "A determination as to eligibility for withholding of removal is conclusive if supported by substantial evidence." *Kamar*, 875 F.3d at 817 (citing *INS v. Elias–Zacarias*, 502 U.S. 478, 481 (1992)).

Before the IJ and the BIA, Gil-Cerqueda identified his proposed particular social group "as former transportation workers in direct competition with [Joaquin] Montiel." (May 7, 2018 Hr'g Tr., A.R.## 123, 127.) To establish "membership in a particular social group" an applicant for withholding of removal "must establish that the group is (1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237 (BIA 2014).

Although the IJ held that Gil-Cerqueda's proposed social group satisfies the immutability requirement, he held that it "fails to meet the particularity standard" because "[t]here is insufficient evidence in the record that there are any other members of this particular social group." (Oral Decision of IJ, A.R.# 65.) The IJ also rejected Gil-Cerqueda's proposed particular social group on the basis that "[t]here is simply insufficient evidence in the record that people in Mexico would view former transportation workers in direct competition with [Joaquin] Montiel as socially distinct within Mexican society." (*Id.* at 66.) The BIA held that "[t]he Immigration Judge properly concluded that the respondent's identified proposed social group . . . is not cognizable because it lacks the elements of particularity and social distinction."[2] (Decision of the BIA, A.R.# 4.) On appeal, Gil-Cerqueda challenges both findings.

"[T]he particularity requirement flows quite naturally from the language of the statute, which, of course, specifically refers to membership in a '*particular* social group.'" *Matter of W-G-R-*, 26 I. & N. Dec. 208, 213 (BIA 2014) (quoting *Rivera-Barrientos v. Holder*, 666 F.3d 641, 649 (10th Cir. 2012)). "'Particularity' chiefly addresses the question of delineation, or . . . the need

---

[2] The IJ also held that Gil-Cerqueda's proposed social group is not "cognizable under the Act because [his] proposed particular social group is a quintessential personal dispute." (Oral Decision of IJ, A.R.# 66.) Although "withholding of removal is 'not available to an alien who fears retribution *solely* over personal matters,'" *Kamar*, 875 F.3d at 818 (quoting *Al-Ghorbani*, 585 F.3d at 997), because the BIA did not reference this holding, there is no indication that the BIA adopted this alternative reasoning for the IJ's decision, *see Khalili*, 557 F.3d at 435.

to put 'outer limits' on the definition of 'particular social group.'" *Id.* at 214 (quoting *Castellano-Chacon v. INS*, 341 F.3d 533, 549 (6th Cir. 2003); *Sanchez-Trujillo v. INS*, 801 F.2d 1571, 1576 (9th Cir. 1986)). "Particularity requires that 'the proposed group can accurately be described in a manner sufficiently distinct that the group would be recognized, in the society in question, as a discrete class of persons.'" *Juan Antonio v. Barr*, 959 F.3d 778, 790 (6th Cir. 2020) (quoting *Umana-Ramos v. Holder*, 724 F.3d 667, 671 (6th Cir. 2013)).

Although the particularity requirement ordinarily works to narrowly define a proposed social group, as the agency held, a "group" also cannot consist of a single member. *See Paplekaj v. Holder*, 411 F. App'x 844, 846 (6th Cir. 2011) ("This Circuit has adopted the Board's definition of a 'social group' as 'a group of persons all of whom share a common, immutable characteristic'" (quoting *Castellano–Chacon*, 341 F.3d at 546–47)). "[A]n applicant's burden includes demonstrating the existence of a cognizable particular social group." *W-G-R-*, 26 I. & N. Dec. at 223. Besides the conclusory assertion that it "was in complete contradiction to the very description of the [proposed particular social group]" for the agency to hold that Gil-Cerqueda is its only member, Gil-Cerqueda has not even attempted to demonstrate the existence of such a group. (Pet'r's Br. at 31–32.) And, as the agency explained, the record contains no evidence of other former transportation workers in direct competition with Montiel. Therefore, substantial evidence supports the agency's finding that Gil-Cerqueda is the sole member of his proposed particular social group and, accordingly, that he is ineligible for withholding of removal.[3]

---

[3] To the extent that Gil-Cerqueda now argues that he is a member of other social groups, including "Americanised individual[s] who will stand out in the Mexican society" and "Mexicans who are targeted by powerful criminal organizations, they have lived in the United States of America for a very long time, and are accompanied by family member(s) to Mexico," (Pet'r's Br. at 37–38), this Court lacks jurisdiction to consider alleged social groups not raised before the IJ or the BIA, *see Reyes-Cardona v. Holder*, 565 F. App'x 366, 368 (6th Cir. 2014) (citing 8 U.S.C. § 1252(d)(1); *Ramani v. Ashcroft*, 378 F.3d 554, 559 (6th Cir. 2004)); *see also Viuda De Mejia v. Sessions*, 691 F. App'x 245, 248 (6th Cir. 2017)). In any event, "we have repeatedly held that the social group of Mexicans returning from the United States is not a cognizable

Moreover, even assuming that Gil-Cerqueda's proposed social group satisfies the particularity requirement, "the social-[distinction] requirement refers to whether the individuals with the shared characteristic are perceived as a group in the society at issue." *Umana-Ramos*, 724 F.3d at 673. "To have the 'social distinction' necessary to establish a particular social group, there must be evidence showing that society in general perceives, considers, or recognizes persons sharing the particular characteristic to be a group." *W-G-R-*, 26 I. & N. Dec. at 217. "Although the society in question need not be able to easily identify who is a member of the group, it must be commonly recognized that the shared characteristic is one that defines the group." *Id*. "In other words, if the common immutable characteristic were known, those with the characteristic in the society in question would be meaningfully distinguished from those who do not have it." *M-E-V-G-*, 26 I. & N. Dec. at 238. "Social distinction may therefore not be determined solely by the perception of an applicant's persecutors." *W-G-R-*, 26 I. & N. Dec. at 218.

Although Gil-Cerqueda's brief mentions the social distinction requirement, he has not made any argument or presented any evidence showing that any element within Mexican society (besides, perhaps, Montiel himself) perceives, considers, or recognizes former transportation workers in direct competition with Montiel to be a cognizable social group. *See Zaldana Menijar v. Lynch*, 812 F.3d 491, 499 (6th Cir. 2015) ("Though the documentary evidence in the record does establish El Salvador as one of the most dangerous countries in the world, nothing in the record shows Salvadorans as viewing Zaldana's purported group as socially distinct within their society."); *see also Munoz-Cano v. Sessions*, 690 F. App'x 407, 410 (6th Cir. 2017). Therefore,

---

social group under the Immigration and Nationality Act, and its members are not entitled to relief on the basis of this identity." *Dealmonte-Castillo v. Sessions*, 737 F. App'x 282, 285 (6th Cir. 2018) (collecting cases).

substantial evidence supports the agency's finding that Gil-Cerqueda's proposed social group also lacks social distinction.

Because we hold that the agency did not err in finding that Gil-Cerqueda does not belong to a particular social group, there is no need to determine whether he met his burden of showing that he would be subject to persecution in Mexico—either from the government or from persons the government is unwilling or unable to control—based on his membership in a particular social group. *See Sanchez-Robles v. Lynch*, 808 F.3d 688, 692–93 (6th Cir. 2015); *see also Khalili*, 557 F.3d at 436. Accordingly, because the agency's determination that Gil-Cerqueda was not eligible for withholding of removal was supported by substantial evidence, the record does not compel reversal of the BIA's decision.

## II.     Convention Against Torture

To qualify for protection under the CAT, an applicant must "establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). "Torture, in any of its myriad manifestations, must entail the intentional infliction of severe mental or physical pain upon an individual by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." *Bi Qing Zheng*, 819 F.3d at 294–95 (quoting *Alhaj v. Holder*, 576 F.3d 533, 539 (6th Cir. 2009)). Unlike a claim for withholding of removal, "[n]o protected-ground nexus is required." *Haider v. Holder*, 595 F.3d 276, 289 (6th Cir. 2010) (citing *Almuhtaseb v. Gonzales*, 453 F.3d 743, 751 (6th Cir. 2006)). "Rather, torture may be based on any reason so long as it is inflicted by, instigated by, or done with the consent or acquiescence of a government official or someone acting in official capacity." *Hamida*, 478 F.3d at 741. "Acquiescence of a public official requires that the public official, prior

to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. § 1208.18(a)(7).

The IJ held that:

> There is insufficient evidence in the record to suggest that the respondent will be tortured in his country of removal, Mexico, by or at the instigation of, or with the consent or acquiescence of a public official, or person acting in an official capacity. *See* 8 C.F.R. §1208.18. There is insufficient evidence in the record that the government of Mexico is interested in torturing the respondent, or would acquiesce[] in his torture. The respondent offered some testimony that he saw Mr. Montiel meet with police officers, and that he knows a county attorney or prosecutor there, but there's insufficient evidence that Mr. Montiel's relationships with these police officers and city officials, in any way, would lead to the respondent's torture, and that, in any way, cause the [Mexican] government to instigate, consent, acquiesce to the respondent's torture, and therefore, the court finds that he has failed to meet his burden to establish that he's eligible for Convention Against Torture.

(Oral Decision of IJ, A.R.# 67.) The BIA "agree[d] that [Gil-Cerqueda's] apprehension that the man he fears has corrupt government connections did not establish, in any more than a speculative way, that a Mexican government official will torture him, or will acquiesce[] or be willfully blind to his torture, upon return." (Decision of the BIA, A.R.# 4.)

Gil-Cerqueda argues that the BIA erred in determining that he was not entitled to CAT relief because the "[t]he BIA did not address the issue that [the] gang situation in Mexico is quite severe," and the evidence he submitted demonstrates that "public officials in Mexico have acquiesced to torture in that country" and that "[p]olice corruption is a serious problem." (Pet'r's Br. at 39–40.) Gil-Cerqueda's claim can be viewed as either a legal or a factual challenge to the agency's decision; however, neither interpretation of his claim has merit.

To the extent that Gil-Cerqueda argues that the IJ did not consider "all evidence relevant to the possibility of future torture," 8 C.F.R. § 1208.16(c)(3), his claim is a legal challenge that is reviewed *de novo*, *see Kilic v. Barr*, 965 F.3d 469, 473–74 (6th Cir. 2020). However, the IJ stated

that he considered all the documents entered into evidence, and "[b]oth the Board and the immigration judge (1) articulated the correct legal standards, (2) accurately described [Gil-Cerqueda's] claim, and (3) explained in fair detail why they did not think [his] evidence established a likelihood of torture" by, or with the consent or acquiescence of, the Mexican government. *Id.* at 474. Although there was no specific discussion of Gil-Cerqueda's evidence about the gang situation in Mexico, there is no requirement to "exhaustively analyze every individual piece of evidence and each individual subargument." *Id.* This is especially the case here because the severity of the gang situation in Mexico was irrelevant to the agency's finding. Regardless of how much gang activity there is in Mexico, the agency held that it was too speculative to presume that government officials would consent or acquiesce to gang members torturing Gil-Cerqueda based only on Montiel's relationships with some unknown police officers and government officials. Therefore, the agency did not make a legal error in its consideration of Gil-Cerqueda's CAT claim.

Gil-Cerqueda's claim can also be viewed as a factual challenge to the finding that it was too speculative to conclude that Montiel's relationships would lead to government officials inflicting or ratifying his torture. However, Gil-Cerqueda presented no evidence that Montiel's threats would be carried out or ratified by the police. Back in 2002, it was Montiel's employees, not the police, who threatened Gil-Cerqueda. And Gil-Cerqueda has not presented evidence that those threats were delivered with the consent or backing of the police. Nor has he presented any evidence of Montiel causing the police to torture anyone else, or of Montiel torturing someone with police consent or acquiescence. In fact, he testified that he was unaware of Montiel ever even threatening anyone else. Moreover, although Gil-Cerqueda testified that he heard from Montiel's employees that Montiel "used to mistreat them a lot, that he was very rude, and he was very violent with them," he did not testify that Montiel's actions were carried out by, or with the consent of,

the police. (May 7, 2018 Hr'g Tr., A.R.# 113.) Therefore, the IJ and the BIA "reasonably found that [Gil-Cerqueda's] speculative testimony did not carry [his] burden of proof." *Kilic*, 965 F.3d at 474.

### III. Due Process

"We review *de novo* alleged due process violations in removal hearings." *Bi Qing Zheng*, 819 F.3d at 296 (citing *Hassan v. Gonzalez*, 403 F.3d 429, 435 (6th Cir. 2005)). "Fifth Amendment guarantees of due process extend to aliens in deportation proceedings, entitling them to a full and fair hearing." *Id.* (quoting *Huicochea–Gomez v. INS*, 237 F.3d 696, 699 (6th Cir. 2001)). However, "the immigration judge retains 'broad discretion in conducting that hearing.'" *Lin v. Holder*, 565 F.3d 971, 979 (6th Cir. 2009) (quoting *Castellano–Chacon*, 341 F.3d at 553). "A due process violation occurs only when 'the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case.'" *Id.* (quoting *Hassan*, 403 F.3d at 436). Moreover, "[t]o prevail on a due process challenge, an alien must demonstrate not only error, but also 'substantial prejudice,' or showing the alleged violation affected the outcome of the proceeding." *Id.* (quoting *Gishta*, 404 F.3d at 979). "Therefore, reviewing an alleged due process violation is a two-step inquiry: first, whether there was a defect in the removal proceeding; and second, whether the alien was prejudiced because of it." *Vasha v. Gonzales*, 410 F.3d 863, 872 (6th Cir. 2005).

Gil-Cerqueda argues that the evidence so supported his claims for withholding of removal and protection under the CAT that the IJ's denial of his claims "indicates that [the IJ] failed to take into account all factors present." (Pet'r's Br. at 43.) However, an IJ's disagreement with an applicant's view of the evidence is not a violation of due process. Gil-Cerqueda has not identified what factors the IJ allegedly failed to consider and, as explained above, substantial evidence supported the IJ's findings. *See Jashari v. Sessions*, 722 F. App'x 481, 495 (6th Cir. 2018) (holding

that there was no due process violation when the IJ's finding was correct). Moreover, the failure to identify the factors allegedly not taken into account means that Gil-Cerqueda cannot show that he was prejudiced by the purported defect. *See Clark v. Holder*, 424 F. App'x 526, 528 (6th Cir. 2011). Therefore, the IJ did not violate Gil-Cerqueda's right to due process.

## CONCLUSION

For the reasons stated above, we **DENY** Gil-Cerqueda's petition for review.