NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0273n.06

Nos. 19-3339/21-3895

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| HADEEL KHALASAWI | ) | **FILED** |
| Petitioner, | ) ) | Jul 12, 2022 |
|  | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | |
|  | ) | ON PETITION FOR REVIEW |
| MERRICK B. GARLAND, Attorney General, | ) | FROM THE BOARD OF |
|  | ) | IMMIGRATION APPEALS |
| Respondent. | ) | |
|  | ) | |

Before: SUTTON, Chief Judge; KETHLEDGE and READLER, Circuit Judges.

KETHLEDGE, Circuit Judge. In 1998, the Board of Immigration Appeals ordered that Hadeel Khalasawi be removed to Iraq. He remained in the United States under orders of supervision until 2017, when the government detained him and many others for the purpose of carrying out their orders of removal. Khalasawi then applied for relief under the Convention Against Torture. The Board denied relief and later denied his motion to reopen and reconsider. Khalasawi petitions for review of both decisions. We dismiss in part and deny in part his petitions for review.

I.

Hadeel Khalasawi was born in Iraq and entered the United States in 1980, at six years old. He is a Chaldean Catholic, baptized in Detroit a few months after he arrived. In 1993 he was convicted in Michigan of assault with intent to do great bodily harm; the government thereafter

began removal proceedings. In 1998, an immigration judge ordered him removed and the Board dismissed his appeal.

For many years, however, Iraq refused to repatriate Iraqi nationals with orders of removal. *See Hamama v. Adducci*, 912 F.3d 869, 872 (6th Cir. 2018). Khalasawi thus remained in the United States under orders of supervision. Khalasawi's criminal history since then includes misdemeanor domestic violence in 2005, assault with a dangerous weapon in 2005, delivering or manufacturing marijuana in 2006, misdemeanor assault and battery in 2010, and attempted larceny of a building in 2017. In 2017, Iraq began to cooperate with repatriation efforts. *Id*. That June, Immigrations and Customs Enforcement arrested Khalasawi at his home as part of "Operation Crosscheck," in which ICE sought to detain people with outstanding orders of removal to Iraq.

Khalasawi later moved to reopen his removal proceedings based on changed conditions in Iraq. The Board agreed to reopen his case. Khalasawi then applied for relief under the Convention Against Torture, arguing that, as a Chaldean Catholic, he would be tortured if he returned to Iraq. In support of his application, Khalasawi attached expert declarations, news articles, and country reports from the State Department.

In 2018, an immigration judge denied Khalasawi's application for deferral of removal under the Convention Against Torture. The Board affirmed. Khalasawi then filed a motion to reopen proceedings and to reconsider the denial of relief, which the Board denied in 2021. now petitions for review of the Board's decisions.

II.

Where, as here, the Board issues its own opinion, we review that opinion as the final agency determination; we also review the immigration judge's decision to the extent the Board adopted its reasoning. *See Zhao v. Holder*, 569 F.3d 238, 246 (6th Cir. 2009). We review the Board's

legal determinations de novo and uphold the Board's factual findings unless the evidence "not only supports a contrary conclusion, but indeed compels it." *Shkulaku-Purballori v. Mukasey*, 514 F.3d 499, 501–02 (6th Cir. 2007).

A.

Khalasawi argues that the Board erred when it denied his application for relief under the Convention Against Torture. To obtain that relief, Khalasawi must show that he "more likely than not" would be tortured upon his return to Iraq "by, or at the instigation of, or with the consent or acquiescence of," an Iraqi public official. 8 C.F.R. §§ 1208.16(c), 1208.18(a)(1).

Khalasawi's experts opined that he would likely be tortured or killed if he returned to Iraq. The experts opined that Christians in Iraq faced violence and persecution at the hands of a state-supported militia called the Popular Mobilization Forces, and that anti-Western and anti-American animus is widespread. One expert asserted that the Iraqi media's coverage of deportees' criminal records, and their lack of state-issued identification, meant that the Iraqi government would likely detain them. Khalasawi also cited a 2017 report by the State Department, to the effect that the Iraqi government routinely used torture as an interrogation tactic. Khalasawi further contended that his characteristics specifically put him in danger. He is an apostate—born to a Muslim father but baptized Christian—with a chest tattoo of Mother Mary holding a cross, and a criminal record that includes drug offenses, all of which are serious transgressions under Islam. He speaks no Arabic and lacks family ties in Iraq. An expert thus testified at his hearing that "his fate is sealed" if he returns to Iraq—i.e., he will be tortured and killed.

But the government's experts opined that Christian deportees from the United States faced no appreciable risk of torture by the Iraqi government. These experts explained that Christians live and worship in the Ninewah Plains region of Iraq, and that Westernization is common there,

given the return of many Iraqis from abroad. The experts further said that the Iraqi government has investigated and sought to punish past abuses by the Popular Mobilization Forces—evidence that the government opposes rather than acquiesces to militia violence against Christians. And the experts stated that, even though the state often detains individuals who lack identification documents, there are no reported incidents of torture due to the lack of identification. In short, the government's experts disagreed that the Iraqi government would likely torture Khalasawi or acquiesce to his torture.

The question before us now is whether the record as a whole compels us to reject the Board's conclusion. The answer is no: both sides presented extensive evidence in support of their positions, and the Board had some basis for its conclusion that Khalasawi's evidence was more speculative or outdated than persuasive. And contrary to Khalasawi's argument here, the immigration judge and Board did consider his evidence as a whole, rather than consider each of his points in isolation. We have no quarrel with Khalasawi's contention that he faces some risk upon his return to Iraq; but his evidence does not compel a finding that he is likely to be tortured upon his return there. We therefore cannot grant relief. *Kilic v. Barr*, 965 F.3d 469, 473–74 (6th Cir. 2020).

B.

Khalasawi argues that the Board erred when it denied his motion to reopen and reconsider its decision based on conditions since the Board rendered it in 2019. A motion to reopen permits a deportee to state new facts for the record upon which to renew his claim for relief, while a motion to reconsider is a challenge to errors of law or fact in the prior decision. 8 U.S.C. § 1229a(c)(6)–(7). We review the denial of either motion for an abuse of discretion. *See Trujillo Diaz v. Sessions*, 880 F.3d 244, 248 (6th Cir. 2018); *Yeremin v. Holder*, 738 F.3d 708, 718 (6th Cir. 2013).

In a motion to reopen, Khalasawi must present evidence that "reveals a reasonable likelihood" that he has met the requirements for relief under the Convention Against Torture. *Hernandez-Perez v. Whitaker*, 911 F.3d 305, 320–21 (6th Cir. 2018). "[O]ne relevant fact" in this analysis "is whether the claim has already been reviewed and found wanting"—if so, the Board may require movants to "present evidence that would likely change the result in the case." *Id*. at 321 (cleaned up).

Here, Khalasawi submitted materials that described a recent uptick in anti-American sentiment in Iraq, the Iraqi government's use of torture as a means of interrogation, the chance of detention (and thus torture) if a deportee lacks identification, and the risk that a deportee with "North American identity indicators" might be suspected of ties to the Islamic State. Yet the Board concluded that Khalasawi had not made the showing necessary to reopen the proceedings. The Board explained that much of Khalasawi's evidence was either "cumulative" of his original arguments or represented a "continuation of violence" rather than new conditions. To the extent that Khalasawi's evidence addressed country conditions arising after the Board's earlier decision, the Board concluded that he had not shown a "particularized risk of future torture" in Iraq. Khalasawi's arguments and evidence in his motion to reopen are largely the same as those in his original application for relief, and thus face the same points of rebuttal. And his arguments about new conditions in Iraq are otherwise "too generalized and too speculative" to present a reasonable likelihood of relief. *Cruz-Samayoa v. Holder*, 607 F.3d 1145, 1156 (6th Cir. 2010). The Board did not abuse its discretion when it denied his motion to reopen.

Khalasawi also emphasizes that immigration judges have recently granted relief to similar applicants under the Convention Against Torture. But Khalasawi did not raise this argument in his motion to reopen and reconsider or in his two supplements to that motion. And we have

jurisdiction to consider "only claims properly presented to the [Board] and considered on their merits." *Ramani v. Ashcroft*, 378 F.3d 554, 560 (6th Cir. 2004). We dismiss this argument for lack of jurisdiction.

Khalasawi's remaining arguments are insubstantial. He argues that the Board erred because it required him to show a material change in country conditions rather than new and material evidence. But the Board asked whether the "new evidence would likely change the outcome" of the case. We have upheld the Board's use of that standard in this context. *See Hernandez-Perez*, 911 F.3d at 321. Khalasawi also styled his motion as one to reconsider, but he did not identify a prior error of fact or law by the Board; that aspect of his motion was therefore meritless. *See* 8 C.F.R. § 1003.2(b)(1).

Khalasawi's petition for review of the denial of his motion to reopen and reconsider is dismissed in part and denied in part.