RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0124p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

EFRA SAMBA DEH,

                              *Petitioner*,

    *v.*

TODD W. BLANCHE, Acting U.S. Attorney General,

                             *Respondent*.

No. 25-3659

─────────────────

On Petition for Review from the Board of Immigration Appeals.
No. A 213 187 870.

Decided and Filed:  April 29, 2026

Before:  THAPAR, BUSH, and MURPHY, Circuit Judges.

─────────────────

## COUNSEL

─────────────────

**ON BRIEF:**  Julia C. Nemecek, THE NEMECEK FIRM, LTD., Columbus, Ohio, for Petitioner. Walter Bocchini, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

─────────────────

## OPINION

─────────────────

THAPAR, Circuit Judge.  Efra Deh, a Mauritanian national, entered the United States and sought asylum, withholding of removal, and protection under the Convention Against Torture (CAT).  After an immigration judge denied his petition, Deh moved to reopen the proceedings because he alleged his interpreter mistranslated portions of his immigration hearings.  The immigration judge denied that motion, and the Board of Immigration Appeals

affirmed.   Deh now petitions for review of that denial.   Since he can't identify any specific mistranslations at his immigration hearings, Deh's petition fails.

I.

Federal immigration authorities took Efra Deh into custody at a border crossing in California.   Deh was a Mauritanian national, and he didn't have valid documents to enter the United States, so the government began removal proceedings.   Deh admitted that he was removable, but he applied for asylum, withholding of removal, and CAT protection.   Deh contended that he feared persecution and torture if he returned to Mauritania.   In his asylum application, Deh claimed that he had been forced to work as a slave and that Mauritanian authorities had arrested and tortured him multiple times.   He also provided a letter from his sister recounting that Mauritanian police had repeatedly tortured him.

Deh then testified before an immigration judge at three separate hearings.   During those hearings, Deh stated that he had worked as a slave in Mauritania, performing hard labor without enough food.   Deh denied that Mauritanian police had ever arrested him—despite what he wrote on his asylum application.   Deh then recounted escaping from slavery, traveling to Mauritania's capital, and leaving Mauritania with a passport.   He provided this testimony using different court-appointed interpreters who spoke Deh's native language of Fulani.

Following those hearings, the immigration judge denied Deh's petitions for relief.   The judge found that Deh wasn't credible because there were many inconsistencies in his testimony and his asylum application.   Among other inconsistencies, the judge pointed to conflicting testimony about where Deh lived in Mauritania, what persecution he experienced there, and whether Mauritanian police had arrested and tortured him.

Deh didn't appeal that decision to the Board of Immigration Appeals.   Instead, he later moved to reopen the proceedings.   To justify reopening, Deh noted that the government had subsequently disqualified the court-appointed interpreter who translated his third hearing.   So he contended that this disqualification "tainted" his testimony.   AR 76.

In support, Deh provided an affidavit in which he claimed he "had some issues with understanding the Fulani interpreter" at his third hearing.  AR 101.  Deh feared the interpreter might have been speaking a different dialect of Fulani and thus failed to relay everything that Deh said to the judge.  As a result, Deh argued that he lacked a meaningful opportunity to present his case.

The immigration judge denied Deh's motion to reopen.  As the immigration judge explained, Deh had been repeatedly instructed to inform the immigration judge if he had difficulty understanding the interpreter.  Yet neither Deh nor his attorney objected to the accuracy of the interpretation at his third hearing or during closing arguments to the judge.  Even in his motion to reopen, Deh failed to identify any specific interpretation errors.  So the immigration judge denied Deh's request to reopen the proceedings.

Deh appealed and raised two arguments before the Board of Immigration Appeals.  First, he argued that the immigration judge erred by denying his motion to reopen proceedings in light of the allegedly incompetent interpretation.  Second, Deh contended that the immigration judge erred by declining to use his own discretion to reopen the proceedings sua sponte.  The Board rejected both arguments in a written order.  Like the immigration judge, the Board emphasized that Deh didn't object at the hearing or identify any specific interpretation errors.  So the immigration judge properly denied Deh's motion to reopen.  And the Board similarly rejected Deh's claim that the immigration judge should have reopened the proceedings sua sponte because there weren't any "exceptional situations" that would justify sua sponte reopening.  AR 4.

Deh timely petitioned this court for review of the agency's decision.  He argues that the Board erred by affirming (1) the denial of his motion to reopen the proceedings and (2) the decision not to sua sponte reopen the proceedings.

II.

Because the Board provided its own opinion, we review that opinion as the agency's final decision.  *Kilic v. Barr*, 965 F.3d 469, 472 (6th Cir. 2020).  And to the extent the Board adopted the immigration judge's reasoning, we also review the immigration judge's decision.  *Id.*

We review the denial of a motion to reopen immigration proceedings for abuse of discretion.  *Elgebaly v. Garland*, 109 F.4th 426, 436 (6th Cir. 2024).  The Board abuses its discretion if its decision "was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group."  *Id.* (quotation omitted).  None of that occurred here.

A.

Deh contends that the agency should have reopened his immigration proceedings because the interpreter from one of his hearings was later disqualified.  But motions to reopen are generally disfavored.  *See INS v. Abudu*, 485 U.S. 94, 110 (1988).  An immigration judge may not grant a motion to reopen unless the petitioner offers evidence that is "material and was not available and could not have been discovered or presented at the former hearing."  8 C.F.R. § 1003.23(b)(3); *see also Sakhawati v. Lynch*, 823 F.3d 852, 857 (6th Cir. 2016).  Evidence qualifies as "material" if it would "likely . . . change the result in the case" if the proceedings were reopened.  *Elgebaly*, 109 F.4th at 436–37 (quotation omitted).  Yet Deh hasn't identified any evidence likely to change the outcome of this case.

For starters, Deh can't point to any specific mistranslations or mistakes by his interpreter at the third hearing that would have led the Board to grant his petition.  Although Deh gestures at "some issues with understanding" and asserts that the interpreter "maybe was speaking a different" dialect of Fulani, he doesn't explain what translation issues occurred or what information was allegedly lost.  AR 101.  Without more detail, Deh's allegations are too "speculative" to conclude that the disqualified translator affected his hearing in any way.  *Dieng v. Barr*, 947 F.3d 956, 963 (6th Cir. 2020) (quotation omitted).  So Deh can't show any potential translation errors that materially undermined the immigration judge's finding that he wasn't credible.

Deh responds that it is "extremely difficult" to pinpoint direct translation errors without a bilingual transcript.  Petitioner's Br. at 16 (quotation omitted).  Yet he could easily obtain the transcript and audio of his hearing.  *See* Off. of the Chief Immigr. Judge, Immigr. Ct. Prac. Manual § 3.9; U.S. Dep't of Just., Bd. of Immigr. Appeals Prac. Manual § 4.5.  After that, Deh

could have reviewed his hearing with another interpreter to identify any mistakes or omissions from his testimony.

Aside from failing to point out translation errors, Deh hasn't explained what he meant to say at the third hearing. After all, the immigration judge identified the "most important concerns" from Deh's testimony that contributed to determining he wasn't credible. AR 53. So even if Deh can't pinpoint a translation error, he could at least explain what he meant to say at his third hearing and how that would have alleviated the credibility concerns. But he hasn't done that.

What's more, even if we don't consider any of the allegedly mistranslated testimony, Deh's inconsistent testimony from his earlier hearings already supported the immigration judge's finding that he wasn't credible, regardless of what he said at the third hearing.

*First*, Deh testified during his first hearing that he was "beaten" daily, yet he later admitted that being "beaten" just meant he was forced to perform hard labor like herding sheep or carrying water. AR 120. And he conceded that he was physically injured on only one occasion.

*Second*, Deh told inconsistent stories about where he lived in Mauritania. He initially claimed on his asylum application that he lived in Wompou from 2012 to 2018. But Deh testified at his first hearing that he lived in Kiffa during that time and then moved to Nouakchott before leaving the country. And both these answers differed from his statement to an immigration officer that he had been living in Sangue-Dieri immediately before leaving Mauritania.

*Third*, Deh claimed in his asylum application that Mauritanian authorities had arrested and tortured him multiple times, and he provided a letter from his sister supporting those claims. Yet Deh admitted at his first hearing that the police had never arrested him.

*Fourth*, Deh claimed at his first hearing that his older brother had been killed in Mauritania. That statement contradicted his earlier asylum application, which noted only that

"some of [his] family, including two of [his] brothers, remain enslaved" in response to a question about whether his family had been "mistreat[ed] . . . by anyone."  AR 88, 291.

In short, regardless of what happened at the third hearing, Deh's lack of credibility was clear from his first two hearings.  Reopening proceedings for more testimony with a different interpreter wouldn't fix those inconsistencies.

Beyond the contradictions, there's another reason why Deh isn't credible.  Deh claims that he fled from Mauritania to escape persecution.  But he traveled through several other countries without seeking asylum before reaching the United States.  Deh's failure to seek asylum from any country that he passed through on his way to the United States significantly undermines his claims for asylum, CAT protection, and withholding of removal.  *See Sy v. Bondi*, 168 F.4th 828, 835 (6th Cir. 2026) (finding asylum petitioner wasn't credible when "he failed to seek asylum in any of the countries he passed through on his way to the United States").  That's because individuals with a genuine fear of persecution would likely seek protection in the first safe country in which they arrive.

In conclusion, regardless of the interpreter's disqualification, the immigration judge correctly found that Deh wasn't credible.  So the Board didn't abuse its discretion by refusing to reopen the immigration proceedings.

## B.

Deh next argues that the allegedly inaccurate interpretation violated his due-process rights.  We review alleged due-process violations de novo.  *Bi Qing Zheng v. Lynch*, 819 F.3d 287, 296 (6th Cir. 2016).

What process is due to an illegal alien in removal proceedings?  Our precedent indicates that an alien is entitled only to a "full and fair hearing."  *Lin v. Holder*, 565 F.3d 971, 979 (6th Cir. 2009).  And the immigration judge has "broad discretion in conducting that hearing."  *Id.* (quotation omitted).  Proceedings violate the Due Process Clause only when they are "so fundamentally unfair that the alien was prevented from reasonably presenting his case."  *Id.* (quotation omitted).  Even then, an alien must show that his inability to present his case "affected

the outcome of the proceeding." *Id.* Very few alleged defects at an immigration hearing rise to that extreme level.

Our precedent has indicated that, in some circumstances, interpretation errors could meet this standard. *See Al-Saka v. Sessions*, 904 F.3d 427, 434 (6th Cir. 2018). But second-guessing an interpreter's quality won't suffice. Although an immigration judge "has a due process obligation to stop anyone"—including a translator—from making a proceeding fundamentally unfair, he can only do so if the problem is apparent at the time of the proceedings. *Id.* So Deh must first make a threshold showing that "the judge knew that the interpreter could not accurately translate the alien's testimony and never corrected the problem." *Id.*; *see Gishta v. Gonzales*, 404 F.3d 972, 978 (6th Cir. 2005). That didn't happen here.

Far from establishing that the immigration judge knew about any defective interpretation, Deh never objected during the proceedings. In fact, Deh failed to object even though he says he had some issues understanding the Fulani interpreter during the hearing. And the interpreter was disqualified only *after* the immigration proceedings had concluded.

What's more, Deh can't point to any specific interpretation errors, even on appeal. So the immigration judge couldn't have known about any alleged interpretation issues during the hearing. Thus, the hearing didn't violate Deh's due-process rights.

C.

Deh also contends that the agency erred by failing to sua sponte reopen the immigration proceedings. Specifically, Deh argues that the Board made a legal error by considering whether "exceptional circumstances" existed to support reopening instead of "exceptional situations." But we've already held that we lack jurisdiction to review the Board's refusal to sua sponte reopen proceedings. *Rais v. Holder*, 768 F.3d 453, 464 (6th Cir. 2014); *see also Guzman-Torralva v. Bondi*, 154 F.4th 880, 884 (6th Cir. 2025). And to the extent appellate courts do have jurisdiction over a refusal to sua sponte reopen when a petitioner's argument puts "cognizable 'legal standards' in play," Deh hasn't done that. *Herrera v. Bondi*, 162 F.4th 617, 623 (6th Cir. 2025) (quotation omitted). The Board cited the exact legal standard—"exceptional situations"—that Deh wanted it to apply. So Deh can't create jurisdiction by flyspecking the

Board's opinion for a loose synonym. *See Rogers v. Mays*, 69 F.4th 381, 391 (6th Cir. 2023) (en banc). Thus we dismiss his claim for lack of jurisdiction.

\*        \*        \*

We deny in part and dismiss in part the petition for review.